521 So.2d 772 (1988)
Norwood SMITH, Individually and on Behalf of the Minor, Richard Brandon Smith, Plaintiff/Appellant,
v.
MANVILLE FOREST PRODUCTS CORPORATION & Manville Service Corporation, Defendants/Appellees.
No. 19357-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Writ Denied April 4, 1988.
*773 Bruscato, Loomis, Street & Anzelmo by C. Daniel Street, Monroe, for plaintiff/appellant.
Shotwell, Brown & Sperry by C.A. Martin, III, Monroe, for defendants/appellees.
Before HALL, C.J., and LINDSAY and JASPER E. JONES, JJ.
HALL, Chief Judge.
In this declaratory judgment action the plaintiff Norwood Smith, individually and on behalf of the minor, Richard Brandon Smith, appeals the trial court's denial of relief and summary judgment in favor of defendants Manville Forest Products Corporation and Manville Service Corporation. Based on a reimbursement or subrogation provision contained in an employee health care plan provided by Manville, Manville was awarded judgment against plaintiff for $10,377.78 as reimbursement of benefits paid for medical expenses incurred for treatment of plaintiff's injured son. Plaintiff had recovered a total of $34,500.00 by settlements with the liability insurer of a tortfeasor whose fault caused the son's injury and with his own uninsured motorist insurer.
Plaintiff's primary contention on appeal is that since he and his son have not been fully compensated for their damages, the rules of partial subrogation apply and Manville as subrogee is not entitled to recover payments made by it until he and his son have been fully compensated. Manville argues, and the trial court held, that the provision of the plan requiring reimbursement is not the "standard" or "pure" subrogation clause ordinarily found in insurance policies and requires reimbursement of the health care plan out of any damages recovered by the participant in the plan, regardless of whether the participant has been fully compensated for his damages.
For reasons which follow, we reverse the judgment of the district court.
On December 11, 1985, plaintiff's wife and minor son Richard Brandon Smith were involved in an automobile accident in which the son sustained serious injuries. The accident was caused by the fault of Lori Ann Patten who was insured by Casualty Reciprocal Exchange with automobile liability insurance limits of $10,000.00 per person and $20,000.00 per accident. Plaintiff also had an automobile liability policy containing uninsured or underinsured motorist coverage in the amount of $25,000.00 per person and $50,000.00 per accident through State Farm Mutual Automobile Insurance Company.
At the time of the accident, plaintiff was employed by Manville Forest Products Corporation, where he and his dependents were enrolled and eligible to receive benefits in the employee health care plan administered by Manville Service Corporation. The plan provided benefits for medical and related expenses resulting from illness or accident.
Plaintiff submitted the medical expenses generated by the injuries to his son to Manville for payment under the plan. Since the injuries were caused by a third party, Manville would not pay the expenses unless plaintiff signed a "Right of Reimbursement Agreement" in accordance with Section 7.08 of the plan which provided:
*774 Subrogation
If a Participant is injured through the alleged act or omission of another person, the benefits shall be provided only if the Employee or adult Dependent shall agree in writing:
(a) to reimburse this Plan for the amount of benefits provided immediately upon collection of damages, if any, whether by legal action, settlement or otherwise;
(b) to the extent that collection of damages is sought through any means, to provide this Plan with a lien and order directing reimbursement of medical payments, not to exceed the amount of benefits provided by this Plan. The lien and order may be filed with the person whose act caused the injuries, his agent or carrier, the court or the attorney of the Employee.
This Plan or its authorized agents, including the Administrator, shall have the right to intervene in any suit or other proceeding to protect the reimbursement rights hereunder. This Plan shall be responsible for its attorneys fees.
On March 7, 1986, plaintiff obtained court approval and by compromise agreement with Lori Ann Patten and Casualty Reciprocal Exchange, received $10,000.00, the full amount of the liability policy, reserving all rights against State Farm Mutual Automobile Insurance Company.
On March 31, 1986, plaintiff signed a "Right of Reimbursement Agreement" which provided as follows:
In accordance with the "Right of Reimbursement" provision of the Manville Corporation, Group Health Plan, the undersigned hereby agrees to reimburse and pay promptly to the Manville Corporation an amount not exceeding the aggregate amount of benefits paid or to be paid to me or on my behalf under said Plan for charges incurred as a result of injury or disease sustained on or about December 11, 1985, in Ouachita Parish, State of Louisiana, out of any recovery by settlement, judgment or otherwise, from any person or organization responsible therefore, or from such person's or organization's insurance.
The undersigned further agrees to execute instruments and papers, furnish information and assistance, and take other necessary and related action as the Manville Corporation may require to facilitate its right of reimbursement under the Group Health Plan.
The undersigned represents and warrants that no release or discharge has been given with respect to his (their) rights of recovery described herein and that the undersigned has done nothing to prejudice said rights.
Qualifying the last paragraph of the agreement, plaintiff wrote on the form the words: "Except for Minor Settlement". Defendants then paid $10,377.78 in medical benefits on behalf of plaintiff's son.
On May 30, 1986, plaintiff executed with court approval a minor's settlement with State Farm Mutual Automobile Insurance Company whereby State Farm paid $24,500.00 of its $25,000.00 uninsured motorist coverage.
Plaintiff subsequently claimed additional benefits under the plan, but defendants declined to pay and demanded reimbursement of the sums previously paid. Plaintiff refused to reimburse defendants and instituted this action seeking a declaration that defendants were not entitled to reimbursement or subrogation from the insurance proceeds. Defendants filed an answer and reconventional demand seeking dismissal of plaintiff's declaratory action, a declaration that defendants owed no further benefits until total medical charges exceeded total settlement recovery, and a money judgment for the amounts already paid by the plan. Defendants subsequently filed a motion for summary judgment.
The trial court with written reasons granted the summary judgment in favor of defendants. The court found the health care plan to not be a "standard" insurance policy but a low-cost aid to employees and their families. The court further stated that the provision entitled "Subrogation" not only established a right of subrogation (with intervention in suits) against a third *775 party but required a direct agreement by the insured participant to reimburse the plan in the event of any recovery. The court found the provision to be clear, concise and enforceable.
Plaintiff in responding to the Motion for Summary Judgment alleged that his son's damages exceeded the available insurance in this case. Manville takes the position that the amount of available insurance and amount of the son's damages does not matter since plaintiff would have to reimburse the plan in accordance with Section 7.08 of the plan and the "Right of Reimbursement Agreement" regardless of whether the participant has been fully compensated for his damages. For purposes of deciding the motion for summary judgment, we have assumed that plaintiff's son's damages exceeded the available amount of insurance proceeds.
Plaintiff contends that Section 7.08 is a conventional subrogation clause and that Manville as partial subrogee is not entitled to recover any sums until the injured party subrogor has been fully compensated.
An insurer that makes payment to its insured may enforce a conventional subrogation agreement contained in its policy. However, subrogation cannot injure the insured, and if he has been paid only in part for his damages, he may exercise his right for what remains due in preference to his insurer. LSA-C.C. Art. 1826 (former Art. 2162); Southern Farm Bureau Casualty Insurance Co. v. Sonnier, 406 So.2d 178 (1981); Carter v. Bordelon, 370 So.2d 113 (La.App. 1st Cir.1979); Legendre v. Rodrigue, 358 So.2d 665 (La.App. 1st Cir. 1978) writ denied 359 So.2d 1293 (La.1978). In Sonnier, the court applied this rule in rejecting the insurer's suit to recover back medical payments it had paid to its insured after the insured settled with the tortfeasor for less than the full amount of the insured's damages.
Subrogation is the substitution of one person to the rights of another. LSA-C.C. Art. 1825. When subrogation results from a person's performance of the obligation of another, that obligation subsists in favor of the person who performed it who may avail himself of the action and security of the original obligee against the obligor, but is extinguished for the original obligee. An original obligee who has been paid only in part may exercise his right for the balance of the debt in preference to the new obligee. LSA-C.C. Art. 1826.
Subrogation is a legal fiction whereby an obligation is extinguished with regard to the original creditor by payment which he has received from a third person, or from the original debtor with funds provided by a third person. The third person then steps into the shoes of the original creditor, acquiring the right to assert the actions and rights of the original creditor. The intent to convey the right of subrogation must be clearly expressed. Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981); Wallace v. Aetna Life and Casualty Co., 499 So.2d 577 (La.App. 2d Cir.1986); Harris v. Huval Baking Co., 265 So.2d 783 (La.App. 3d Cir.1972), writ denied 263 La. 103, 267 So.2d 210 (1972).
We hold that the provision contained in the plan and the agreement executed by plaintiff constitute a conventional subrogation and that the rules of partial subrogation apply.
First, the section of the plan is entitled "Subrogation". Although the title of a contract provision does not necessarily control the substance of the provision, Harris v. Huval Baking Co., supra, it is certainly a substantial factor in analyzing and characterizing the provision.
Secondly, subrogation has as its primary object reimbursement of the subrogee for payments made by it. Subrogation and reimbursement are not synonymous terms, but the object of conventional subrogation is reimbursement, which this provision in the plan clearly contemplates and provides for.
Next, the provision provides that the participant will provide a lien and order directing reimbursement of medical payments not to exceed the amount of benefits provided by the plan, that the lien and order may be filed with the person whose act caused the injuries or his carrier, and that *776 the plan shall have the right to intervene in any suit to protect its reimbursement rights. An order by the participant to the tortfeasor and his carrier directing reimbursement to the plan amounts to a subrogation in favor of the plan of the participant's rights and actions against the tortfeasor and his insurer. These provisions effectively give the plan the right to assert the actions and rights of the participant (original creditor) against the tortfeasor and his insurer (original debtor).
In practical effect a reimbursement agreement operates in almost all respects like a subrogation agreement. The policy that subrogation should not injure the subrogor is equally applicable to reimbursement.
An out-of-state case closely in point is Westendorf v. Stasson, 330 N.W.2d 699 (Minn.1983). A Health Maintenance Organization (HMO) sought reimbursement for medical services provided out of the proceeds of the member's tort recovery when the total recovery had not fully compensated the injured party. The reimbursement clause provided that the plan is entitled to reimbursement for the value of the services furnished to the extent of compensation benefits or damages recoverable. In denying reimbursement prior to full recovery by the injured party, the court held:
In this case, Group Health drafted its clause in terms of "reimbursement" rather than "subrogation." Although this means that Group Health cannot "stand in the shoes" of its members, in all other respects this clause serves as a subrogation clause and, therefore, we will apply the same principles which govern subrogation....
... [T]he general rule is that subrogation, whether arising from equity or contract, will be denied prior to full recovery. That is, absent express contract terms to the contrary, subrogation will not be allowed where the insured's total recovery is less than the insured's actual loss. See 16 Couch on Insurance 2d § 61.61 (1966); see also 3 Appleman, Insurance Law and Practice § 1675 (1967); Patterson, Essentials of Insurance Law § 33 (1957). The substantial majority of contemporary cases recognize and apply this general rule....
... [W]e hold that reimbursement, whether arising from equity or contract, is precluded prior to full recovery.
The cases relied on by Manville as recognizing a distinction between a conventional subrogation and a reimbursement agreement are readily distinguishable from the instant case.
Harris v. Huval Baking Co., supra, involved a provision in a company medical plan which provided that there was no coverage for medical expenses resulting from injuries where a third party was liable unless litigation arose and the member would suffer in the interim by payment of such expenses, in which case coverage would be provided and the association should be reimbursed. The association intervened in plaintiff's damage suit against the tortfeasor for reimbursement of benefits paid. Plaintiff was awarded full recovery of his damages including medical expenses. The court denied the association recovery against the tortfeasor, holding that the provision for reimbursement did not amount to a conventional subrogation, but allowed the association to recover from the plaintiff out of the sum awarded for medical expenses. The Harris case is distinguishable in that the plan provision did not contain the more expansive subrogation-like provisions of the Manville plan, and the plan participant recovered all of the damages to which he was entitled from the tortfeasor.

Liberty Mutual Insurance Co. v. Weinberger, 329 So.2d 254 (La.App. 4th Cir. 1976) was a suit by an automobile insurer to recover medical payments made to the defendant, the defendant having subsequently settled with the tortfeasor's insurer. The policy provision is not quoted in the opinion but is described as entitling the insurer to reimbursement from defendant out of any recovery from any person legally responsible for the injury causing the medical expense. Defendant contended the reimbursement provision was against public policy. The court rejected this argument, holding that there is no statutory or *777 public policy prohibition against such a reimbursement provision which is favored in order to reduce premiums and to prevent injured persons from collecting twice for the same medical expenses. The court's further comments as to the effect of such provision where the net proceeds of a settlement are not sufficient to repay the insurer are purely dictum as that situation was not presented in that case.
Wallace v. Aetna Life & Casualty Insurance Co., supra, a recent decision of this court, involved a policy provision similar to the one in the instant case but arose under significantly different facts. Plaintiff sued the insurer of a group medical insurance policy for medical expenses related to injuries she sustained in an automobile accident. The defendant contended that plaintiff was not entitled to recover because of the reimbursement provisions of the policy since she had settled with the tortfeasor for the full amount of damages to which she was entitled and had not complied with the policy provision by executing a reimbursement agreement. Plaintiff contended she was not fully compensated and urged the partial subrogation rule. This court held that plaintiff had been fully compensated for her injuries, which holding defeated plaintiff's right to recovery, regardless of whether the policy provision be regarded as a reimbursement clause or a conventional subrogation. In further discussion, unnecessary to the resolution of the case, this court characterized the policy provision as a reimbursement clause and not a conventional subrogation. The court noted that a primary purpose of a reimbursement clause is to prevent multiple recovery by the insured for the same injury and that the plaintiff in that case had been paid by those responsible for her injuries. Denial of recovery in that case was undoubtedly correct. The language of the policy provision in that case is slightly distinguishable from the provision in the instant case in that the present clause provides for the furnishing of an order directing reimbursement by the person causing the injuries, more clearly expressing subrogation rights.
The primary distinction, factually and equitably, between the present case and the cases relied on by Manville discussed above is that in those cases the insured or plan participant was seeking double recovery of medical expenses whereas in the present case the plaintiff, having recovered less than his full damages, cannot be said to have previously recovered his medical expenses. There is no issue of double or multiple recovery of the same damages or expenses in this case.
We hold that the provision in the Manville health care plan is a conventional subrogation agreement. Accordingly, if the damages sustained by plaintiff and his son exceed the amount recovered under the two settlements, Manville as partial subrogee would not be entitled to recover medical payments made to plaintiff since plaintiff has not been fully compensated for his damages.
The amount of plaintiff's damages is, therefore, a material fact which is in dispute. Manville is not entitled to summary judgment as a matter of law.
For these reasons, the judgment of the district court is reversed, the motion for summary judgment is denied, and the case is remanded for further proceedings. Costs of this appeal are assessed to the defendants.
Reversed and remanded.
LINDSAY, J., concurs.