John EVANS, et al.

v.

**MIDLAND ENTERPRISES INC., et al.**

**Civ. A. No. 88–478–B.**

United States District Court,
M.D. Louisiana.

Dec. 12, 1990.

Frederick A. Stolzle, Jr., Baton Rouge, La., for plaintiffs.

David R. Kelly, Breazeale, Sachse & Wilson, Baton Rouge, La., for defendants.

### RULING ON MIDLAND ENTERPRISES' MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIM AGAINST JOHN EVANS

POLOZOLA, District Judge.

This suit was originally filed in state court to recover group insurance benefits resulting from an automobile accident which occurred on September 4, 1985. The defendants timely removed the suit to this court on the grounds that the plaintiff's claim was covered by the Employee Retirement Income Security Act (ERISA). After the suit was removed, Midland Enterprises, Inc. filed a counterclaim against the plaintiff to recover reimbursement for medical expenses which it had paid to the plaintiff arising out of the September 4, 1985 accident. At the time of the accident, the plaintiff, John Evans, was an employee of Port Allen Marine Services, a subsidiary of Midland Enterprises, Inc. Evans was a participant in a group health plan which was provided to employees of Midland and its subsidiaries. Under the group health

plan, Evans was entitled to recover certain medical, hospital, and pharmacy expenses.

Evans submitted the medical expenses associated with the accident to the group health plan for payment. Pursuant to the terms of the plan, Evans signed a "reimbursement agreement" prior to his receiving any medical payments under the plan. The plan then paid Evans $17,612.62 for medical expenses incurred as a result of the accident.

Evans subsequently instituted a personal injury suit against the driver and insurer of the other vehicle, which was eventually settled for $75,000.00.

After the suit was removed to this court, the defendants filed a motion for summary judgment. The court granted the defendants' motion for summary judgment, and the plaintiff's claims under ERISA were dismissed. This court also found that "[b]ecause there is diversity of citizenship and jurisdictional amount present on the counterclaim filed by Midland Enterprises, Inc., this Court ... has jurisdiction over the counterclaim." [1]

This matter is now before the court on Midland's motion for summary judgment on its counterclaim.

■ Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [2] To oppose the granting of summary judgment, Rule 56(e) provides that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, ... [instead, the defending party], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. [3]

Midland claims that it is entitled to recover from the plaintiff under the reimbursement agreement the amount of medical payments it paid to the plaintiff. Plaintiff denies that he is required to reimburse Midland out of his settlement proceeds.

Plaintiff argues that the agreement he signed was not a reimbursement agreement but rather a subrogation agreement. Thus, plaintiff contends that the rules of partial subrogation apply and Midland is not entitled to any recovery out of the settlement unless the trier of fact finds that plaintiff was fully compensated for his damages in the settlement award. Plaintiff also contends that the court cannot grant summary judgment at this time because there is a genuine issue as to a material fact as to whether the plaintiff was fully compensated for his injuries.

In order to properly rule on the pending motion for summary judgment, the court must first decide whether the agreement in question is a subrogation agreement or a reimbursement agreement. In *Smith v. Manville Forest Products Corporation*,[4] the Louisiana Court of Appeal for the Second Circuit, when faced with a similar issue, considered several factors in determining that the agreement in question in that case was a subrogation agreement. The court first noted that the applicable section of the plan in the *Smith* case was entitled "subrogation." The court further stated that "[a]lthough the title of a contract provision does not necessarily control the substance of the provision, it is certainly a substantial factor in analyzing and characterizing the provision." [5]

---

**1.** See Document Number 33 in the Record.

**2.** Fed.R.Civ.P. (Rule) 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Fontenot v. UpJohn Co.*, 780 F.2d 1190 (5th Cir. 1986).

**3.** *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

**4.** 521 So.2d 772 (La.App. 2d Cir.), writ denied, 522 So.2d 570 (La.1988).

**5.** 521 So.2d at 775 (citation omitted).

The second circuit next looked to the substance of the agreement. After acknowledging that subrogation and reimbursement were not synonymous terms, the court stated that "the object of a conventional subrogation is reimbursement, which this provision in the plan clearly contemplates and provides for." [6]

Finally, the court in *Smith* looked to the rights granted in the provision to determine whether it was a subrogation or reimbursement agreement. The court held that

the provision provides that the participant will provide a lien and order directing reimbursement of medical payments not to exceed the amount of benefits provided by the plan, that the lien and order may be filed with the person whose act caused the injuries or his carrier, and that the plan shall have the right to intervene in any suit to protect his reimbursement rights.... These provisions effectively give the plan the right to assert the actions and rights of the participant (original creditor) against the tortfeasor and his insurer (original debtor).[7]

Based on these three factors, the second circuit concluded that the agreement in question was a subrogation agreement rather than a reimbursement agreement. Therefore, pursuant to the rules of partial subrogation, the plan had no right in the *Smith* case to share in the settlement until a trier of fact determined whether the settlement fully compensated the plaintiff for his injuries.[8]

■ Applying the factors used by the *Smith* court to the case at bar, it appears that the agreement signed by the plaintiff is a reimbursement agreement. This decision is based on the following. Both the agreement in question and the provision in the plan requiring that an agreement be entered into are entitled "Right of Reimbursement." As in *Smith*, the agreement

calls for reimbursement to the plan, but such a provision can hardly be said to be contrary to the characterization of this provision as a reimbursement agreement. A reimbursement provision, by definition, calls for reimbursement. Finally, although the provision in the case at bar does provide the plan with a lien on any recovery, as did the plan in *Smith*, the agreement in this case does not grant the plan a right to intervene in any action filed by plaintiff. Thus, the plan in this case is different from that in *Smith* in that the plan does not have "the right to assert the actions and rights of the original participant (original debtor) against the tortfeasor and his insurer (original debtor)." [9] The plan can only seek repayment from the plaintiff after the plaintiff receives a settlement award or a favorable judgment.

Based on the above analysis, the agreement in question can only be characterized as a reimbursement agreement. However, the court's inquiry does not end here. The court must now determine whether such a characterization precludes the plaintiff from arguing that the defendant is not entitled to reimbursement out of the settlement award. In other words, the court must determine whether the rule of partial subrogation, which requires a subrogor to receive full relief before his subrogee may collect under the subrogation agreement, is equally applicable to reimbursement agreements.

Midland argues that if this agreement is a reimbursement agreement, it is entitled to be reimbursed out of the settlement paid to plaintiff, regardless of whether the settlement granted full relief, because the principal of partial subrogation does not apply to reimbursement agreements. In support of this contention defendant relies on three decisions rendered by the Louisiana Courts of Appeal.[10]

---

6.  521 So.2d at 775.

7.  521 So.2d at 775–76.

8.  The court reversed the decision of the trial court which had granted the plan's motion for summary judgment.

9.  521 So.2d at 776.

10.  *Harris v. Huval Baking Co.*, 265 So.2d 783 (La.App. 3d Cir.), writ denied, 263 La. 103, 267 So.2d 210 (La.1972); *Wallace v. Aetna Life and Casualty Ins. Co.*, 499 So.2d 577 (La.App. 2d Cir.1986); *Smith v. Manville Forest Products Corp.*, 521 So.2d 772 (La.App. 2d Cir.), writ denied, 522 So.2d 570 (La.1988).

In *Harris v. Huval Baking Company*[11] the plaintiff received a judgment which awarded him various items of damages, including medical expenses. The plaintiff's medical insurer intervened for reimbursement of medical expenses it had paid to the plaintiff pursuant to a reimbursement agreement. The Louisiana Court of Appeal for the Third Circuit ordered the plaintiff to reimburse the medical insurer the medical expenses it had paid to the plaintiff.

Contrary to the defendant's contention, the court in *Harris* did not address the question of whether the rules of partial subrogation apply to a reimbursement agreement. In *Harris*, the plaintiff successfully tried his case and received a judgment. Such an award is by definition full relief because the trier of fact assigned a specific value to the plaintiff's injuries. Partial subrogation only becomes an issue when a plaintiff settles for less than full compensation. Thus, *Harris* does not control the case at bar.

Defendant also relies on *Wallace v. Aetna Life and Casualty Insurance Company*.[12] The facts in *Wallace* presented the opposite situation of the case at bar. The injured plaintiff in *Wallace* argued that her medical insurer was required to pay for her medical expenses even though she received a settlement award for her damages. The court, in dicta, stated that "[e]ven if the defendant had paid plaintiff's medical expenses, defendant would then have been entitled to reimbursement of those expenses from the plaintiff from her settlement proceeds."[13] However, the court based this dicta on its previous determination that "plaintiff has been fully compensated for her medical expenses [and] she is not entitled to additional payment of those expenses by the defendant."[14] Thus, the court in *Wallace* also did not address the issue of whether the rules of partial subrogation apply to reimbursement agreements because the court specifically found that plaintiff had been fully compensated for her injuries.

Finally, defendant once again cites *Smith v. Manville Forest Products Corporation* to support its position.[15] The court in *Smith*, dealing with facts very similar to those in the case at bar, did go through an extensive analysis to determine whether or not the provision was a subrogation agreement or a reimbursement agreement.[16] Only after finding that the agreement was a subrogation agreement did the court hold that the rules of partial subrogation apply. Defendant is presumably arguing that, by negative implication, had the court found the agreement to be a reimbursement agreement, it would have held the rules of partial subrogation inapplicable.

However, the language of the *Smith* case is contrary to the defendant's position. After the court found that the provision was a subrogation agreement, the court stated that "[i]n practical effect a reimbursement agreement operates in almost all respects like a subrogation agreement. The policy that subrogation should not injure the subrogor is equally applicable to reimbursement."[17] The court then quoted some of the language of the Minnesota case *Westendorf v. Stasson:*[18]

> "In this case, Group Health drafted its clause in terms of 'reimbursement' rather than 'subrogation.' Although this means that Group Health cannot 'stand in the shoes' of its members, in all other respects this clause serves as a subrogation clause and, therefore, we will apply the same principles which govern subrogation....

**11.** 265 So.2d 783 (La.App. 3d Cir.), writ denied, 263 La. 103, 267 So.2d 210 (La.1972).

**12.** 499 So.2d 577 (La.App. 2d Cir.1986).

**13.** 499 So.2d at 580–81.

**14.** 499 So.2d at 580.

**15.** 521 So.2d 772 (La.App. 2d Cir.), writ denied, 522 So.2d 570 (La.1988).

**16.** See text accompanying notes 4–8; defendant also cited *Smith* for the proposition that the agreement in the case at bar is a reimbursement agreement rather than a subrogation agreement.

**17.** 521 So.2d at 776.

**18.** 330 N.W.2d 699 (Minn.1983).

[T]he general rule is that subrogation, whether arising from equity or contract, will be denied prior to full recovery. That is, absent express contract terms to the contrary, subrogation will not be allowed where the insured's total recovery is less than the insured's actual loss. The substantial majority of contemporary cases recognize and apply this general rule....

[We] hold that reimbursement, whether arising from equity or contract, is precluded prior to full recovery." [19]

Thus, the *Smith* court actually held that reimbursement agreements are subject to the rules of partial subrogation. Although this language is arguably dicta since the court had already decided that the agreement in question was a subrogation agreement, it does not appear that there is any Louisiana jurisprudence to the contrary.[20]

Based on the above, this court finds that the rules of partial subrogation apply to reimbursement agreements. As such, a genuine issue exists as to a material fact in this case: Did the plaintiff receive full compensation for his injuries? Defendant is entitled to reimbursement from the settlement proceeds only if full compensation was granted.

Since both parties have fully briefed the issue involved in this case, the court on its own motion will consider the plaintiff's opposition as a cross motion for summary judgment on the same issue.[21] Thus, the court shall grant a partial summary judgment in favor of John Evans finding that, if the trier of fact determines that the settlement paid to Evans does not fully compensate Evans for his injuries, Evans will not have to reimburse the defendant for the medical expenses paid by the defendant under the Louisiana law of partial subrogation.

IT IS FURTHER ORDERED that in all other respects, Midland's motion for summary judgment be, and it is hereby DENIED.

party moves for summary judgment the district court, in an appropriate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment." *Landry v. G.B.A.,* 762 F.2d 462, 464 (5th Cir.1985) (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 2d § 2720). *See also* the opinion of this court in *Metropolitan Property and Liability Ins. Co. v. Landry,* 729 F.Supp. 1581, 1582 (M.D.La.1990).

---

**19.** 521 So.2d at 776 (citations omitted).

**20.** As was previously discussed, the other cases cited by the defendant are not on point.

**21.** This procedure has been sanctioned by the United States Court of Appeals for the Fifth Circuit. In *Matter of Caravan Refrigerated Cargo, Inc.,* 864 F.2d 388, 393 (5th Cir.1989), that court stated:

In making this first argument, Supreme Beef ignores the fact that a district court may grant summary judgment for the non-movant sua sponte. We have noted that "when one