United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 12, 2004**

Charles R. Fulbruge III
Clerk

Revised March 16, 2004

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No.03-30286

———————————

NEW ORLEANS ASSETS, L.L.C.,

Plaintiff-Appellant,

v.

CARL E. WOODWARD, ET AL.,

Defendants,

LOUISIANA INSURANCE GUARANTY ASSOCIATION,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————————

Before JONES, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

New Orleans Assets, L.L.C., ("NOA") sued the Louisiana Insurance Guaranty Association ("LIGA"), the successor to NOA's original property insurer, for benefits due under a property insurance policy. The district court granted summary judgment for LIGA. We reverse and remand.

I.

NOA owns a building that houses the regional headquarters for the Federal Bureau of Investigation. After the building was

completed, NOA learned that extensive growth of mildew and mold on the exterior walls would necessitate nine million dollars in repairs. NOA alleged that the mold and mildew problems resulted from faulty design and construction and sued various parties involved in the design and construction of the building.

NOA also sued LIGA, a state-created association designed to assist insured parties when an insurance company becomes insolvent. *See* La. Rev. Stat. Ann. § 22.1376 (West 1995). NOA had purchased property insurance through Reliance Insurance Company, but Reliance later became insolvent. Therefore, LIGA was "deemed the insurer" and had "all rights, duties, and obligations of the insolvent insurer." La. Rev. Stat. Ann. § 22:1382(A)(2) (West Supp. 2004). In effect, when Reliance went bankrupt, LIGA stepped into the shoes of Reliance and became NOA's property insurer. *See id.* However, because Louisiana statute limits LIGA's exposure to $149,900 per claim,[1] *see id.* § 22:1382(A)(1)(a)(iii), NOA can recover, at most, $149,900 per claim from LIGA.

NOA later settled with several defendants, but the settlement did not cover all of NOA's loss. The parties do not agree on precisely how much of NOA's loss remains unrecovered, but they do agree that both the settlement and the remaining unpaid loss far exceed $149,900.

Upon learning of the settlement, LIGA filed for summary

---

[1] LIGA's maximum exposure is $150,000 per claim minus a $100 deductible. La. Rev. Stat. Ann. § 22:1382(A)(1)(a)(iii) (West Supp. 2004).

judgment.  LIGA relied on the terms of the contract between NOA and Reliance, which now--apart from the statutory cap on liability-- governs the relationship between NOA and LIGA.  According to LIGA, this contract requires NOA to reimburse its insurer for any payment received in settlement even if NOA has not yet recovered its full loss.  For instance, if LIGA had paid one dollar to NOA, NOA would have to reimburse LIGA upon receiving the first dollar in settlement.  Because LIGA's liability is capped at $149,900, and because NOA has already received more than that amount, NOA would have to reimburse LIGA immediately for any benefit paid. Therefore, LIGA argued, it owes NOA nothing.

The district court agreed and granted summary judgment in favor of LIGA.[2]  NOA now appeals.

## II.

We review *de novo* a district court's grant of summary judgment.  *St. David's Health Care Sys. v. United States*, 349 F.3d 232, 234 (5th Cir. 2003).  A court should grant summary judgment only if the case presents no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

In this case, an insured party (NOA) is entitled to receive benefits from an insurer (LIGA) and to recover damages from third

---

[2]  Although multiple parties and multiple claims for relief are involved in NOA's suit, the district court certified the summary judgment in favor of LIGA as final and appealable under Federal Rule of Civil Procedure 54(b).

party tortfeasors.  Insurance contracts typically provide for this contingency in at least two ways: subrogation and reimbursement. With subrogation, an insurer acquires the right to assert the actions and rights of the insured against the liable tortfeasor. *Barreca v. Cobb*, 668 So. 2d 1129, 1131 (La. 1996).  With reimbursement, the insurer has only a right of repayment against the insured.  *Id.*

When, as in this case, an insured party recovers only part of its loss from a tortfeasor, two different rules might establish the priority between an insurer and the insured to the recovery: "(1) *Plan Priority*, under which priority is given to the plan for full recovery 'off the top,' [or] (2) *Make Whole*, under which priority is given to the beneficiary to keep everything he recovers from third parties until he is made entirely whole."  102 F.3d at 1373-74 (emphasis in original).  *Sunbeam-Oster Co. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1374 (5th Cir. 1996).[3]

These two sets of distinctions are connected in that, under Louisiana's doctrine of partial subrogation, a subrogation agreement invariably requires application of the make whole principle.  The doctrine of partial subrogation requires that "[a]n original obligee who has been paid only in part may exercise his

---

[3]  *Sunbeam* also recognized a third rule: "(1) *Pro Rata*, under which the plan and the beneficiary share ratably in the beneficiary's recovery from third parties."  *Id.* at 1374.  Neither party argues for application of this rule.

right for the balance of the debt in preference to the new obligee." La. Civ. Code Ann. art. 1826(B) (West Supp. 2004). In such a case, the insured party "is *always* preferred," and an insurer can claim only that portion of the recovery which remains after the insured has been fully compensated. *Fair Grounds Corp. v. ADT Sec. Sys.*, 719 So. 2d 1110, 1119 (La. Ct. App. 1998) (emphasis added)*; see also S. Farm Bureau Cas. Ins. Co. v. Sonnier*, 406 So. 2d 178, 180 (La. 1981) (noting the long pedigree of this doctrine).[4]

LIGA seeks to avoid the application of the make whole principle. LIGA points to a sentence in the insurance contract

---

[4] The district court did not account for the doctrine of partial subrogation embodied in article 1826(B), but instead relied on *Sunbeam* and *Smith v. Manville Forest Prods. Corp.*, 521 So. 2d 772, 776 (La. Ct. App. 1988), for the proposition that make whole applies only when a contract's plain language is silent or ambiguous.

The interpretive rules applied in *Sunbeam* are inapposite. *Sunbeam* applied federal law to interpret a plan governed by ERISA and carefully noted that a different result would obtain if state law governed. We "emphasize[d] that the Plan's reimbursement and subrogation provisions must be read in the statutory context of ERISA and, more particularly, in the precise textual context in which they appeared." *Id.* We also pointed out that ERISA plans and ordinary commercial insurance policies are "far from analogous" and specifically noted that "[w]ere [*Sunbeam*] a diversity case involving reimbursement or subrogation in the context of . . . individual or group insurance plans that are *not* ERISA plans, we would, of course, be *Erie*-bound to apply Louisiana's partial subrogation doctrine, which embodies the Make Whole Principle." *Id.* For the same reason, the ERISA cases cited by LIGA, *Roberts v. Richard*, 743 So. 2d 731 (La. Ct. App. 1999) and *National Employee Benefit Trust of the Associated General Contractors of America v. Sullivan*, 940 F. Supp. 956 (W.D. La. 1996), are inapposite.

We also disagree with the district court that *Smith* creates a judicially-created exception to the clear and mandatory language of Article 1826(B). The district court quoted *Smith* as holding that partial subrogation applies only "absent express contract terms to the contrary." 521 So. 2d at 776. This language was not part of the *Smith* court's analysis of partial subrogation, but actually composes one small section of a longer block quotation from *Westendorf v. Stasson*, 330 N.W.2d 399 (Minn. 1983), that the *Smith* court cited for a wholly different proposition. Furthermore, because *Smith* did not consider whether partial subrogation rights could be waived, these statements are *dicta*.

5

that provides: "If you [the insured] waive your rights against another party in writing after loss or damage, we [the insurer] can recover from you any amount you received for that waiver."[5] LIGA characterizes this sentence as a reimbursement clause. Therefore, LIGA argues, the rules of partial subrogation that would be applicable to a subrogation clause are not applicable here.

---

[5]   The entire clause states:

B.   The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US . . . :

If any person or organization to or for whom **we** make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to **us** to the extent of **our** payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But **you** may waive **your** rights against another party in writing:

1.   prior to loss or damage to **your covered property** or, if business income coverage applies, loss of **business income you** sustain due to direct physical loss of or damage to property at the **described premises**

2. after loss or damage to **your covered property** or, if **business income** coverage applies, loss of **business income you** sustain due to direct physical loss of or damage to property at the **described premises**, only if at time of loss or damage that party is one of the following:

a.   someone insured by this insurance;
b.   a business firm:
    (1) owned or controlled by **you**; or
    (2) that owns or controls **you**;
c.   **your employee** or employer;
d.   the owner, lessor or tenant of the:
    (1) **described premises**; or
    (2) **premises** where loss or damage occurred; including their **employees**, partners and stockholders; or
e.   your relative by blood or marriage.

If **you** waive **your** rights against another party in writing after loss or damage, **we** can recover from **you** any amount **you** received for that waiver. But **we** cannot recover more than the amount **we** paid you for that loss or damage.

(emphasis in original).

6

According to LIGA, the reimbursement clause requires NOA to reimburse LIGA for any amounts received in settlement even if NOA has not yet been made whole.[6]

Thus, we must determine the import of this contract clause. Because this dispute presents a question that the Louisiana Supreme Court has not addressed squarely, we must make an *Erie* guess. *See Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 435 (5th Cir. 2003). We conclude that, under Louisiana law, the clause at issue is a conventional subrogation clause to which the make whole principle applies.[7]

---

[6] LIGA also argues that NOA's claim is moot, but this argument appears to have no support independent of LIGA's arguments about the meaning of the contract.

[7] Lest the distinction drawn between subrogation and reimbursement be misinterpreted, we add that we are not convinced that characterizing this provision as a reimbursement clause would ultimately help LIGA's argument. Louisiana courts have observed that "[t]he policy that subrogation should not injure the subrogor is equally applicable to reimbursement." *Great West Cas. Co. v. Manning*, 687 So. 2d 416, 419 (La. Ct. App. 1996); *Smith*, 521 So. 2d at 772. Federal courts examining Louisiana law have interpreted such statements as indications that the make whole doctrine applies equally to subrogation and reimbursement. *See, e.g.*, *Evans v. Midland Enters. Inc.*, 754 F. Supp. 91, 95 (M.D. La. 1990). For instance, in *Sunbeam*, we recognized in *dicta* that, if presented with "a diversity case involving reimbursement or subrogation in the context of . . . individual or group insurance plans that are *not* ERISA plans, we would, of course, be *Erie*-bound to apply Louisiana's partial subrogation doctrine, which embodies the Make Whole principle." 102 F.3d at 1374 (emphasis in original).

LIGA argues strenuously that we must distinguish between subrogation and reimbursement. Reimbursement and subrogation are not identical concepts, but they often produce identical results. *See Barreca*, 668 So. 2d at 1131; *Great West*, 687 So. 2d at 419; *Smith*, 521 So. 2d at 776. In many circumstances, therefore, "the label we place on [an insurer's] rights is immaterial." *Great West*, 687 So. 2d at 419. While LIGA's brief draws many distinctions between subrogation and reimbursement, it fails to marshal any legal authority for the distinction most critical to its argument: that the make whole principle does not apply to reimbursement clauses.

Regardless, because the clause at issue is a subrogation clause, we need not decide whether the partial subrogation rule embodied in Article 1826 applies to reimbursement.

In determining whether a provision establishes subrogation or reimbursement, Louisiana courts "must examine the language used in the provision and, more importantly, the rights which it grants to the insurer." *Barreca*, 668 So. 2d at 1131. Even if a provision mentions both subrogation and reimbursement, if that provision gives the insurer the right to assert the actions and rights of the insured against the tortfeasor, then the clause is a subrogation clause. *Id.* A true reimbursement clause does not allow the insurer to proceed against the tortfeasor. *Id.*

For instance, in *Barreca*, the provision at issue stated that the insured "agree[d] to pay the [insurer] from the proceeds of any settlement, judgment or otherwise." This language suggests a right of reimbursement, but because the same provision granted subrogation rights, the court applied principles applicable to subrogation. *Id.* Likewise, in *Smith*, the provision at issue stated that "benefits shall be provided only if the [insured] . . . shall agree in writing . . . to *reimburse* [the insurer] for the amount of benefits provided immediately upon collection of damages." 521 So. 2d at 774 (emphasis added). Like the court in *Barreca*, the court in *Smith* ruled that this phrase--though explicitly evoking reimbursement--was simply part of a larger subrogation clause.[8] The mixture of subrogation language and

_____

[8] LIGA insisted at oral argument that *Smith* is distinguishable because the provision at issue in that case required the insured to provide the insurer with a lien and order directing reimbursement. 521 So. 2d at 774. However, *Smith*'s

8

reimbursement language is unsurprising; because "the object of conventional subrogation is reimbursement," subrogation rights will commonly subsume reimbursement. *See id.* at 775.

Given these examples, the provision at issue in this case, read as a whole, is a subrogation clause.[9] The provision is entitled "TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US." *Cf. Smith*, 521 So. 2d at 775-76 (examining title of provision to determine whether it provided for subrogation). Similarly, the first paragraph transfers to the insurer "rights to recover damages from another." The transfer of rights from the insured to the insurer is the essence of subrogation. *Barreca*, 668 So. 2d at 1131. In light of this language, we cannot characterize this section of the contract as providing for reimbursement; the Louisiana Supreme Court has recognized that a true reimbursement provision does not allow the insurer to proceed against the tortfeasor. *See id.* Because the clause at issue provides for both subrogation rights and reimbursement, we treat it as a subrogation clause.

---

analysis did not hinge on the mechanism for granting the insurer rights, but the fact that the agreement granted rights to the insurer--a hallmark of subrogation. *See id.* at 775-76.

[9] LIGA points out, and we fully recognize, that the ordinary meaning of the text governs the meaning of contracts. *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d 1134, 1137 (La. 2002). LIGA rests its argument on a single sentence from a longer provision. However, under Louisiana law, "an insurance contract is construed as a whole and each provision in the contract must be interpreted in light of the other provisions." *Id.* Viewing the clause as a whole, and mindful of the examples set in *Barreca* and *Smith*, both of which allude to reimbursement but provide for subrogation, we construe the contract as providing for subrogation.

Thus, because the make whole doctrine applies to subrogation agreements, *see* La. Civ. Code Ann. art. 1826(B), the make whole doctrine applies to this case. The clause relied upon by LIGA does not shield it from its statutory and contractual responsibility as successor insurer.[10]

### III.

We therefore REVERSE the district court's grant of summary judgment and REMAND this case for further proceedings.

---

[10] Because we render a decision in this case, we deny as moot NOA's alternative motion to certify this issue to the Louisiana Supreme Court.