United States Court of Appeals,

Fifth Circuit.

No. 91–3256.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, Plaintiff–Appellee,

v.

Earline CHABERT, Defendant–Appellant.

Sept. 30, 1992.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, SMITH, Circuit Judge, and FITZWATER,[*] District Judge.

POLITZ, Chief Judge:

rline Chabert appeals a judgment against her for $132,000 in favor of Southern Pacific

Transportation Company (SOPAC). She also appeals the amount awarded on her counterclaim for

attorney's fees and costs. For the reasons assigned, we affirm.

Background

On November 3, 1982, Chabert's husband, Thomas Chabert, was killed in an automobile

accident on the Greater New Orleans Bridge. At the time of his death Thomas Chabert was acting

within the scope of his employment with SOPAC. On February 16, 1983, SOPAC paid a $132,000

death benefit to Chabert under the National Agreement between SOPAC and the union of which her

husband was a member. Contemporaneous with the payment, SOPAC and Chabert signed a contract

which provided:

> In consideration of the payment of $132,000 as aforementioned both parties agree to be
> governed by ... the subrogation provision....
>
> *Subrogation:* The carrier shall be subrogated to any right of recovery an employee or his
> personal representative may have against any party for loss to the extent that the carrier has
> made payments pursuant to this Article.

[*]District Judge of the Northern District of Texas, sitting by designation.

Chabert filed a wrongful death suit against various defendants which she settled, individually and on behalf of her two minor children, for $825,000. In the settlement she released all defendants from any claim arising out of her husband's accident and death. SOPAC did not participate in the suit or settlement. It filed the instant suit seeking reimbursement of the $132,000 it had paid to Chabert. Chabert counterclaimed for the attorney's fees and costs she had incurred in securing the $825,000 settlement.

After a bench trial, the district court concluded that the $825,000 payment fully compensated Chabert for her losses. The court also found that the agreement between her and SOPAC was a conventional subrogation and that Chabert and her counsel were fully aware of SOPAC's subrogation claim when they settled for $825,000 and released the tortfeasors. The court awarded Chabert $19,425.06 on her counterclaim for expenses incurred in obtaining the settlement. The offset was calculated based on the court's estimate of the amount of the legal fees attributable to the settlement, an hourly-based total of $121,406.65. This expense item was multiplied by 16%, considered SOPAC's percentage share of the recovery. Chabert timely appealed the SOPAC award and the amount awarded on her counterclaim.

Analysis

Findings of fact made pursuant to a bench trial are subject to the clearly erroneous standard of review.[1] Legal conclusions are subject to plenary review. The parties agree that Louisiana law controls the instant dispute.

1. *Subrogation*

Subsequent to the SOPAC/Chabert agreement the articles of the Louisiana Civil Code pertaining to subrogation were extensively amended by La. Acts 1984, No. 331, Sec. 1, effective January 1, 1985. In the absence of legislative expression to the contrary, substantive laws are not

---

[1]Fed.R.Civ.P. 52(a).

given retroactive effect.[2]  With one exception discussed below, the pre-revision articles in effect at the time of SOPAC's payment to Chabert control the instant dispute.[3]

Under Louisiana law, subrogation may be either conventional or legal.[4]  Conventional subrogation occurs when the creditor or obligee, receiving payment from a third person, subrogates his rights, actions, privileges, and mortgages against the debtor or obligor;  this subrogation must be express and contemporaneous with the payment.[5]  A conventional subrogation may also be partial if the payment to an obligee represents only part of the total debt owed.[6]  In a partial subrogation the debt is divided between the subrogor and the subrogee, making them either joint or several obligees.[7]  Historically, Louisiana law has given a preference to the original creditor or subrogor over the partial subrogee.[8]  This preference derives from the legal presumption that one does not act against ones own interest when subrogating another to one's rights.[9]

The *Sonnier* court applied this maxim to a conventional, partial subrogation between an

---

[2]La.Civ.Code art. 6.

[3]*Anthony v. New Orleans Public Service, Inc.,* 480 So.2d 440 (La.App.1985), *cert. denied,* 482 So.2d 628 (La.1986).

[4]La.Civ.Code art. 2159 (West 1952) (repealed 1984 La.Acts 331, Sec. 1).

[5]La.Civ.Code art. 2160 (repealed).

[6]*Southern Farm Bureau Casualty Insurance Co. v. Sonnier,* 406 So.2d 178 (La.1981);  *see also* Saul Litvinoff, *Subrogation,* 50 La.L.Rev. 1143, 1148–49 (1990).

[7]*Sonnier,* 406 So.2d at 180 (citing *Cox v. W.M. Heroman & Co.,* 298 So.2d 848 (La.1974)).

[8]*Sonnier,* 406 So.2d at 181;  Litvinoff, *supra,* at 1148;  Marcel Planiol, 2 *Treatise on the Civil Law* No. 515, p. 287 (La.Law Inst. trans. 11th ed. 1939);  C. Aubry & C. Rau, IV *Cours de Droit Civil Francais* § 321, pp. 208–9 (La.Law Inst. trans. 6th ed. 1965).

[9]The continued force of this traditional adage, "*nemo contra se subrogasse censetur,*" was questioned by one scholar analyzing the 1984 revisions to the subrogation articles.  *See* Alain A. Levasseur, *Louisiana Law of Obligations in General* 176 (1988) (discussing La.Civ.Code art. 1827 and comment (d)).  Despite this possible trend in the modern law, *Sonnier,* a pre-revision decision relying upon the maxim, has been followed by post-revision cases.  *See Smith v. Manville Forest Products Corp.,* 521 So.2d 772 (La.App.), *cert. denied,* 522 So.2d 570 (La.1988) and *Provident Life and Accident Insurance Co. v. Turner,* 582 So.2d 250 (La.App.1991).

insurer and its insured. The court held that an insurer cannot recover funds advanced to its insured unless the insured has been fully compensated for the loss.[10] SOPAC makes the converse argument that if the subrogor, Chabert, has been fully compensated by her $825,000 settlement, then SOPAC, the partial subrogee, can recoup its entire $132,000 payment. We find this argument consistent with *Sonnier* and its progeny. In *Smith v. Manville Forest Products Corp.*,[11] the court held that if an employee who received medical benefits was subsequently fully compensated, then the employer who had paid the benefits could recoup the payment pursuant to a conventional subrogation agreement. Similarly, in *Provident Life and Accident Insurance Co. v. Turner,*[12] the court stated that pursuant to Sonnier, an insurer could collect the amount of a subrogation claim from insureds who had recovered the full amount of damages from the tortfeasors. The *Turner* court also relied upon the plurality opinion in *Audubon Insurance Co. v. Farr.*[13] Because the *Audubon* insured had breached a subrogation agreement by settling with the tortfeasors without the insurer's knowledge or consent, the insurer was awarded judgment in the amount it had paid as a partial, conventional subrogation.[14]

The *Audubon* plurality confirmed the rule that an insured holds excess recovery in trust for the insurer.[15] This rule, rooted in insurance law, was explained thusly:

> When the insured recovers from the tortfeasor an amount which, with the amount already received from his insurer, exceeds the loss actually sustained by him, he holds the excess as

---

[10]406 So.2d at 180–181.

[11]521 So.2d 772 (La.App.), *cert. denied,* 522 So.2d 570 (La.1988).

[12]582 So.2d 250 (La.App.1991).

[13]453 So.2d 232 (La.1984).

[14]*See also Wallace v. Aetna Life and Casualty Insurance Co.,* 499 So.2d 577 (La.App.1986) (reaching the same result pursuant to a reimbursement agreement).

[15]*See Audubon,* 453 So.2d at 235 (plurality) (following *Pennsylvania Fire Insurance Co. v. Harrison,* 94 So.2d 92 (La.App.1957)); *see also Voss v. Mike & Tony's Steak House,* 230 So.2d 470 (La.App.1969) (following Harrison); *Great Falls Insurance Co. v. Jordan,* 454 So.2d 301 (La.App.1984) (following *Audubon* plurality).

trustee for his insurer for whom it belongs[.][16]

Whether SOPAC is considered a partial subrogee, as described in *Sonnier* and the civilian tradition, or is analogized to an insurer, the result is the same: if Chabert has received full compensation, then she must reimburse SOPAC. Chabert argues that the *Sonnier* and *Audubon* rationales only apply to insurance contracts. *Harrison,* for example, is an early case cited for the proposition that an insured who receives a double recovery holds the excess in trust for the insurer. The *Harrison* court derived this rule from general treatises on insurance law and one Louisiana case.[17] The *Sonnier* analysis, however, is based on traditional civilian doctrines; thus we are not persuaded that *Sonnier* and its progeny are limited to insurance policy subrogation clauses.[18] *Harrison's* trustee theory has its roots in insurance law, but the *Harrison* rule appears intertwined with the civilian authorities[19] and, in any event, is consistent with the *Sonnier* line of cases.

Chabert claims that *State National Fire Insurance Co. v. Sykes*[20], is the controlling authority in the instant dispute. Chabert argues that SOPAC's subrogation agreement gives it a claim against the various tortfeasors with whom Chabert settled. Under this theory, these tortfeasors would then bring an indemnity action against Chabert for her violation of the settlement and release agreement. We do not find that the *Sykes* holding mandates this result. In *Sykes,* an insurer sued the tortfeasors who had injured its insureds, and then amended the complaint to state a cause of action against the insureds themselves. The issue on appeal was whether the insurer could maintain its action against the tortfeasors. The court found that it could, and that the tortfeasors in turn could bring an indemnity action against the insureds. We are not persuaded that *Sykes* is controlling; it does not

---

[16]*Harrison,* 94 So.2d at 94.

[17]*See* 94 So.2d at 94.

[18]*See* 406 So.2d at 181 (discussing Pothier and citing Planiol and Aubry and Rau).

[19]For example, the *Turner* court grouped *Sonnier* and *Audubon* together; the *Audubon* plurality confirmed the continued validity of *Harrison.*

[20]527 So.2d 589 (La.App.1988).

address the issue at bar. Whether a cause of action existed against the insureds was not before the *Sykes* court and apparently was left unresolved after the insurer's success in recovering payment from the tortfeasors.

Chabert also argues that the terms of her agreement with SOPAC distinguish this case from the cases which allow subrogees to recoup payments directly from the subrogor. The agreement provided that SOPAC was "subrogated to any right of recovery an employee or his personal representative may have against any party for loss to the extent that the carrier has made payments pursuant to this Article." This language falls short of the reimbursement power granted in *Smith* and *Wallace*.[21] The *Sonnier* insurance clause, however, was similar to the clause signed by Chabert.[22] The *Turner* opinion did not contain a description of the terms of the subrogation agreement. We acknowledge that a Louisiana court might draw the distinction relied upon by Chabert.[23] This, however, does not appear to be the jurisprudential trend. Indeed *Turner,* the most recent authority, did not discuss the terms of the clause and interpreted *Sonnier* in support of the subrogation right. As the *Sonnier* clause is indistinguishable, we are impelled to conclude that a Louisiana court faced with this issue would resolve that SOPAC should recoup the advanced funds.

A second means by which a subrogation could be effected is by operation of law. A legal subrogation arises "[f]or the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it."[24] Under the terms of SOPAC's contract with

---

[21]*See Smith,* 521 So.2d at 774; *Wallace,* 499 So.2d at 579.

[22]*See* 406 So.2d at 180.

[23]*See e.g., Brister v. Blue Cross & Blue Shield of Florida, Inc.,* 562 So.2d 1040 (La.App.1990) (discussing *Smith* and *Sonnier* with the assumption these cases relied on the double recovery provisions of insurance policies).

[24]La.Civ.Code art. 2161 (repealed). The code as amended in 1984 by Act 331, Sec. 1, is more restrictive in that it requires that the subrogee have recourse against the others with whom it owes a debt as a result of the payment. *See* La.Civ.Code art. 1829(3); *Illinois Central Gulf Railroad Co. v. Deaton, Inc.,* 581 So.2d 714 (La.App.), *cert. denied,* 588 So.2d 1117 (La.1991); *Johnson v. Deselle,* 596 So.2d 261 (La.App.), *cert. denied,* 600 So.2d 638 (La.1992). The altered

the Union, SOPAC paid Chabert $132,000 as a death benefit and thereby became *legally* subrogated to Chabert's claim for up to $132,000.[25] Traditionally, however, legal subrogation vests the subrogee with a right against the debtors, not the subrogor.[26]

In addition, we find that an added phrase in article 1829(3) is a remedial and interpretative change clarifying an ambiguity in article 2161(3). This portion of article 1829(3) therefore has retroactive application.[27] Former article 2161(3) explains that subrogation takes place of right "[f]or the benefit of him who, being bound with others, or for others, for the payment of the debt, *had an interest in discharging it.*" (Emphasis supplied.) The present article 1829(3) provides that subrogation takes place by operation of law "[i]n favor of an obligor who pays a debt he owes with others or for others and who has recourse *against those others* as a result of the payment[.]" (Emphasis supplied.) The added specification that the legal subrogee has recourse against the other obligors defines the recourse, thereby excluding an action against the original obligee or subrogor.

---

language was an intended change from "traditional law." *See* Litvinoff, *supra,* 50 La.L.Rev. at 1171. Accordingly, this substantive change does not have retroactive application.

[25]*See Aetna Insurance Co. v. Naquin,* 488 So.2d 950 (La.1986) (interpreting La.Civ.Code art. 2161(3)); *see also Sykes* (interpreting *Naquin* and the present article 1829(3)); *Turner.*

[26]*See e.g.,* Marcel Planiol, 2 *Treatise on the Civil Law* No. 510, p. 285 (La.Law Inst. trans. 11th ed. 1939) (the subrogee bound with others has an action against "all the debtors"); Saul Litvinoff, *The Law of Obligation in the Louisiana Jurisprudence* 624 (1985) (explaining that the subrogee is entitled to assert any rights and actions "*of* the former creditor"); C. Aubry and C. Rau, IV *Cours de Droit Civil Francais* § 321, p. 204 (La.Law Inst. trans. 6th ed. 1965) (the subrogor is omitted from the list of persons against whom the subrogee may enforce a legal subrogation).

[27]*See* La.Civ.Code art. 6 comment (d), 1987 Revision Comments. The legislative history of the 1984 amendments to the subrogation articles does not explain the motivation for the change in article 2161(3). The minutes of the House Committee Meeting report that Professor Saul Litvinoff of the Louisiana State Law Institute addressed the legislative committee and explained the changes in the subrogation laws. *House Committee on Civil Law and Procedure,* Minutes of Meeting on House Bill 250 by Representative Fernandez (April 24, 1984). In his independent writings, Professor Litvinoff does not describe article 1829(3) as effecting a change on this issue from article 2161(3) or from the partial subrogation rules. *See* Litvinoff, *supra,* 50 La.L.Rev. at 1181, 1182. Because the history of subrogation is consistent with the added specification in the new law, we find that this phrase in article 1829(3) remedies an ambiguity in article 2161(3) but does not reflect a substantive change in the law. The phrase therefore qualifies for retroactive application.

Another civilian source for the new statute supports this interpretation: The Ethiopian Civil Code article which is delineated as a legislative source for article 1829 directly specifies that the payment of a debt for which one is bound with others has the legal effect of entitling the payor to "indemnity or contribution *from his co-debtors* [.]"[28]

Our analysis of Louisiana subrogation law satisfies that SOPAC could not pursue a legal subrogation claim against Chabert successfully. This does not affect, however, our conclusion that a partial, conventional subrogation grants SOPAC this right. The rule SOPAC extracts from Sonnier and its progeny is derived solely from conventional subrogation. *Smith,* for example, defines the partial subrogee's right to recoup funds from the partial subrogor in conventional subrogation terms.[29] We hold that pursuant to the Smith and Turner interpretations of conventional subrogation, SOPAC has a conventional subrogation right against Chabert.

2. *Full Compensation*

Because Chabert has preference over the partial subrogation claim held by SOPAC,[30] SOPAC may not recoup its prior payments to Chabert unless Chabert has received full compensation for her loss. At trial, the burden of proof was on Chabert to demonstrate that the $825,000 settlement did not fully compensate her total damages.[31]

The settlement agreement awarded $594,000 to Chabert and $115,500 to each of her children. Subtracting costs and attorney fees, the net compensation received by Chabert was $340,035. This figure is within the damage range estimated by one of the economists who testified at the bench trial.

---

[28]*Civil Code of the Empire of Ethiopia Proclamation No. 165* of 1960 art. 1971 (Gazette Extraordinary 1960) (emphasis supplied).

[29]*See* 521 So.2d at 775 (citing *Sonnier* and La.Civ.Code art. 1826); *see also Brister,* 562 So.2d at 1046 (discussing *Smith* and *Sonnier* ).

[30]*See Sonnier.*

[31]*Wallace* (citing *Meyer v. State Department of Public Safety,* 312 So.2d 289 (La.1975)).

This expert calculated Chabert's past loss to be between $94,094 and $104,758 before taxes, and between $76,299 and $83,687 after taxes. Future loss was estimated at $239,187 to $291,000 before taxes, and $205,404 to $247,567 after taxes. The Louisiana Supreme Court has noted that the intermediate appellate courts are split on the issue of whether taxes are deducted from or included in damage awards; however, the court declined to resolve this issue.[32] Because a majority of Louisiana's circuit courts calculate gross rather than net earnings, we will assume that this is the appropriate measurement of damages.[33] The lowest post-tax estimate is $333,281. The district court appropriately could conclude, then, that the $340,035 net settlement fully compensated Chabert. This damage award is within the range of Louisiana's very conservative wrongful death awards.[34]

### 3. *Rule 408*

Chabert argues that the trial court committed reversible error by admitting evidence of communications between Chabert's counsel and SOPAC's counsel during the pendency of Chabert's state suit against the various tortfeasors. The admitted evidence reflected conversations and correspondence between counsel on the subjects of Chabert's potential for recovery against the tortfeasors, whether SOPAC should participate in the litigation, and whether SOPAC would contribute to the cost of the litigation or reach an agreement regarding the subrogation owed. Chabert objected that the evidence was impermissible evidence of compromise negotiations admitted to prove validity or amount of a claim.[35]

---

[32]*Martinez v. U.S. Fidelity and Guaranty Co.,* 423 So.2d 1088 (La.1982).

[33]*See Sorrells v. Eddie Knippers & Associates,* 544 So.2d 556 (La.App. 1st Cir.1989); *LeBleu v. Dynamic Industrial Constructors, Inc.,* 526 So.2d 1184 (La.App. 3d Cir.), *cert. denied,* 528 So.2d 154 (La.1988); *Harris v. Tenneco Oil Co.,* 563 So.2d 317 (La.App. 4th Cir.), *cert. denied,* 568 So.2d 1062 (La.1990); *Nolan v. Jefferson Downs, Inc.,* 592 So.2d 831 (La.App. 5th Cir.1991).

[34]*See Thomas v. State Farm Insurance Co.,* 499 So.2d 562 (La.App.1986), *cert. denied,* 501 So.2d 213 (La.1987).

[35]Fed.R.Evid. 408.

We review evidentiary rulings only for abuse of discretion and will reverse a judgment on the basis of evidentiary rulings only if the challenged ruling affects a substantial right of the party.[36] A trial judge sitting without a jury is entitled to great er latitude in the admission or exclusion of evidence.[37] In a bench trial, reversal is only warranted if all of the competent evidence is insufficient to support the judgment, or if it affirmatively appears that the incompetent evidence induced the court to make an essential finding which it otherwise would not have made.[38] We do not find that the challenged evidence was relevant to the trial court's findings regarding the existence and effect of a conventional subrogation. Therefore, even assuming that the court did err, any error would be harmless.[39]

4. *Attorney Fees*

Chabert counterclaimed against SOPAC to recover her cost of obtai ning $132,000 of the $825,000 from the tortfeasors. The trial court estimated that cost to be $19,425.06. Chabert challenges this finding. We find no error and affirm.

When an employer pays compensation to a worker injured by the wrongful act of a third person, the employer and worker become co-owners of the right to recover damages from the third person.[40] If one pursues this right the other must proportionately contribute to the litigation expenses which are reasonable and necessary to obtain the recovery. Applying the *Moody* formula to the present case SOPAC's proportionate interest in the recovery is calculated as follows:

---

[36]*Seidman v. American Airlines, Inc.,* 923 F.2d 1134 (5th Cir.1991).

[37]*Goodman v. Highlands Insurance Co.,* 607 F.2d 665, 668 (5th Cir.1979).

[38]*Id.; Figgs v. Quick Fill Corp.,* 766 F.2d 901 (5th Cir.1985).

[39]We do not hold that the district court erred; rather, we hold that if the court did err, the error was harmless because other competent evidence on the record is sufficient to uphold the district court's findings of fact and conclusions of law.

[40]*Moody v. Arabie,* 498 So.2d 1081 (La.1986).

Employer's reimbursement    =    Employer's share of recovery

——————————————————————

Recovery from third person


$$\frac{\$132,000}{\$825,000} = 16\%$$

-----

Because SOPAC has a 16% interest in the recovery, 16% of the expenses incurred in securing the recovery should be assessed to it. The district court did not calculate 16% of Chabert's 40% contingency fee. Instead, the court found that the reasonable total for Chabert's litigation expenses was the sum of $121,406.65. Chabert argues that the district court erred in this step in its *Moody* calculation.

We do not find the trial court's calculus to be reversible error. The costs of recovery are the necessary and reasonable expenditures and obligations incurred in effecting recovery.[41] The Rules of Professional Conduct detail the factors determining the reasonableness of an attorney's fees.[42] That a fee is contingent may be considered, but the court is not bound by this consideration alone.[43] The determination of a reasonable fee should be made on a case-by-case basis by the trial court.[44] The

—————————————

[41]*Moody,* 498 So.2d at 1086.

[42]*See* Rule 1.5, Rules of Professional Conduct adopted by the Supreme Court of Louisiana.

[43]*Moody,* 498 So.2d at 1086.

[44]*See Wood v. State Farm Mutual Automobile Insurance Co.,* 591 So.2d 1266 (La.App.1991) (40% contingency fee allowed because the court accepted it as reasonable in that case pursuant to the Rules of Professional Conduct); *Denton v. Cormier,* 556 So.2d 931, 937 (La.App.1990) (one-third contingency fee "reasonable under the circumstances"); *Jaffarzad v. Jones Truck Lines, Inc.,* 561 So.2d 144, 161 (La.App.), *cert. denied,* 565 So.2d 450 (La.1990) (one-third contingency fee reasonable); *Major v. Cotton's, Inc.,* 551 So.2d 57 (La.App.1989); *Samanie & Barnes v. Lawler,* 517 So.2d 340 (La.App.1987).

trial court is expressly charged with making an individual appraisal.[45] The trial court in the case at bar was free to appraise the reasonable cost of recovery based on the court's assessment of the effective use of counsel's time and effort in securing the settlement.

## Conclusion

Because Chabert has been fully compensated by the $825,000 settlement, SOPAC may recover its $132,000 payment in accordance with the partial, conventional subrogation agreement. Further, we find no error in the district court's calculation of Chabert's expenses in recovering the settlement. The judgment of the district court is, therefore, AFFIRMED in all respects.

---

[45]*See Moody.*