Michael **LABICHE**, individually and as curator for the Estate of Rhonda Labiche, and as administrator of the Estates of the minor children, Alicia Labiche, Brandy Labiche, Carless Labiche and Brett Labiche

v.

**LEGAL SECURITY LIFE INSURANCE COMPANY.**

Civ. A. No. 93–2556.

United States District Court, E.D. Louisiana.

Sept. 22, 1993.

Gregory F. Gambell, New Orleans, LA, for plaintiffs.

Roy Edward Blanchard, Sidney W. Degan, III, Foster Parlange Nash, III, New Orleans, for defendant.

## MEMORANDUM AND ORDER

SEAR, Chief Judge.

*Background*

Rhonda Labiche, wife of plaintiff, Michael Labiche, suffered a cardiorespiratory arrest while under the care and treatment of a physician, Dr. Don Lee Bradke. As a result of the arrest, Mrs. Labiche suffered anoxic encephalopathy and has remained in a comatose condition since August 23, 1991. On June 15, 1993, plaintiff filed a medical malpractice action in this court; that action was compromised and a judgment approving the settlement and dismissing the case was entered on July 22, 1993.[1]

On August 5, 1993, Michael Labiche, individually and on behalf of Mrs. Labiche and the Labiche children, filed this diversity action against Legal Security Life Insurance Company ("Legal Security"), Mr. Labiche's major medical insurer, and deposited into the court's registry the sum of $252,224.76, the amount recovered under the settlement for Mrs. Labiche's past medical expenses. Legal Security argues that it is entitled to that amount because it paid Mrs. Labiche $250,-000 under the terms of the policy and is conventionally subrogated to her and Mr. Labiche's rights against the third-party tortfeasor.[2] Plaintiffs argue that to the extent that Legal Security benefits from plaintiffs' recovery as a result of their efforts against the third-party tortfeasor, it must bear a proportionate share of the fees and expenses reasonably incurred to prosecute that claim. Plaintiffs now seek to recover defendant's proportionate share of these costs.

*Discussion*

■ Plaintiffs base their claim for apportionment on the Louisiana Supreme Court case *Moody v. Arabie*, 498 So.2d 1081 (La. 1986). In *Moody*, the Louisiana Supreme Court provided for the apportionment of recovery costs between the awards granted to an injured worker, who brought an action against the tortfeasor, and his employer who intervened in the action.[3] The court held that when an employer or compensation carrier pays compensation to an employee, the employer or carrier is a co-owner with the employee of his cause of action against the third-party tortfeasor and, as such, is liable for a proportionate share of the maintenance and conservation of the right. Therefore the necessary and reasonable expenses incurred in obtaining a recovery must be shared. *Id.* at 1085.[4]

■ Although the *Moody* court did not explain how it reached the conclusion that the employer and employee are co-owners of the cause of action against the tortfeasor, it has long been recognized under Louisiana law that an employer who pays compensation benefits to an injured employee is subrogated by operation of law to the employee's rights against the third-party tortfeasor. *See* La.Civ.Code art. 1829 comment (e); La. R.S. § 23:1101 (West 1985 & Supp.1993): *Chase v. Dunbar*, 185 So.2d 563, 571 (La.Ct. App. 1st Cir.1966). The employer, however, may recover from the tortfeasor only to the extent of the compensation it has paid or has become obligated to pay; thus, the subroga-

---

1. Legal Security was not involved, as an originally named party or party in intervention, in the medical malpractice action. It did, however, intervene in a suit plaintiff filed against Dr. Bradke in state court. Defendant's Memorandum in Opposition, at 2.

2. The subrogation clause of the Legal Security policy provides:

   K. RIGHT OF SUBROGATION. In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization for negligence or any willful act resulting in illness or injury for which benefits are provided hereunder, but only to the extent

of the benefits so provided. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the loss for which such payment was incurred to prejudice such rights.

3. The Fifth Circuit recognized the application of *Moody* in *King v. Employers National Ins. Co.*, 928 F.2d 1438 (5th Cir.1991), a worker's compensation case.

4. The *Moody* court went on to announce a formula for apportioning recovery costs between the employer and employee. I defer discussion of this issue until counsel have had an adequate opportunity to present evidence thereon.

tion is partial as opposed to total. La.Civ. Code art. 1830; La.R.S. § 23:1101.[5]

There is little law to guide me in determining whether to apportion recovery costs in this case. The *Moody* court did not address apportionment outside the context of worker's compensation. Moreover, the interpretation given *Moody* and the application of the formula it provided has not been uniform. Nevertheless, several Louisiana appellate courts have suggested that absent specific legislation to the contrary, in a situation of partial subrogation the general principles of co-ownership apply and apportionment of recovery costs under the *Moody* rationale is proper.[6] For example, in *Nicholes v. St. Helena Parish Police Jury*, 604 So.2d 1023 (La.App. 1st Cir.1992), although the court refused to apportion recovery costs against a health care provider due to statutory language precluding apportionment, the court stressed that ordinarily "[w]here the subrogation is partial, and the thing involved is a

cause of action, co-ownership results" and *Moody* applies. *Id.* at 1031.[7]

In this case, Legal Security seeks to recoup, out of the sums plaintiffs recovered in settlement with the third-party tortfeasor, the amounts it paid Mrs. Labiche under Mr. Labiche's major medical policy. Under the policy, Legal Security is subrogated to "all the insured's rights of recovery against any person or organization whose negligence resulted in the illness or injury for which benefits were provided under the policy, to the extent of the benefits so provided."[8] This is a conventional subrogation insofar as it is created by the parties. It is a partial subrogation because Legal Security, the subrogee, is entitled to recover only those amounts it paid the insured under the policy. Following the reasoning of *Moody*, the partial subrogation of Legal Security creates a relationship of co-ownership between the insured and Legal Security with regard to any cause of action against a third-party tortfeasor. The

**5.** Subrogation is the substitution of one person to the rights of another, either by operation of law (legal subrogation) or by agreement between the parties (conventional subrogation). La.Civ.Code art. 1825 (West 1993). Subrogation is partial when the subrogor pays the subrogee only part of the damages caused by or debt owed by the third-party obligor. *Southern Farm Bureau Cas. Ins. v. Sonnier*, 406 So.2d 178 (La.1981).

**6.** Courts refusing to apply the *Moody* rationale have done so by distinguishing the relevant statutory scheme from the worker's compensation scheme and/or classifying the source of the right as something other than subrogation. *See Bartholomew v. CNG Producing Co.*, 682 F.Supp. 32, 33 (W.D.La.1988) (rejecting application in LHWCA case because employer's right is more akin to lien, not subrogation); *Moore v. State for State University Medical Center*, 596 So.2d 293, 296 (La.App. 3d Cir.1992) (rejecting application in context of health care provider's statutory privilege because relationship between provider and patient is debtor-creditor, not subrogor-subrogee); *Charity Hospital v. McCrimmons*, 593 So.2d 1392, 1394 (La.App. 4th Cir.1992) (accord); *Nicholes v. St. Helena Parish Police Jury*, 604 So.2d 1023, 1031 (La.App. 1st Cir.1992) (rejecting application in context of state-supported hospital's legal subrogation under La.Rev. Stat. 46:8 due to statutory language precluding apportionment); *Miller v. Sauseda*, 611 So.2d 831, 832 (La.App. 3d Cir.1992) (rejecting application where insurer sought to enforce right of reimbursement as opposed to subrogation).

**7.** Cf. *McLain v. Caddo Parish School Board*, 599 So.2d 878 (La.App. 2d Cir.1992), in which the

court refused to apply *Moody* against an insurer that intervened in the insured's action to enforce its right as subrogee. The court relied on the Louisiana Supreme Court's decision in *Southern Farm Bureau Cas. Ins. Co. v. Sonnier*, 406 So.2d 178 (La.1981), to conclude that in a situation of partial subrogation the subrogor and subrogee are not co-owners of the cause of action against the third-party tortfeasor. *Id.* at 879.

The *McLain* court's reliance on *Sonnier* is misplaced. *Sonnier*, decided prior to *Moody*, did not address whether a partially subrogated insurer and its insured are co-owners of the cause of action against the tortfeasor; it dealt with preferential rights between the subrogee and subrogor. What the *Sonnier* court held was that although the subrogee and subrogor each may exercise its right against the tortfeasor independently, a subrogor who has been paid only in part may exercise his right for the balance of the debt in preference to the subrogee. *Sonnier*, 406 So.2d at 181. In my view, *Sonnier* should not be construed to mean that the subrogor and subrogee are not co-owners of the cause of action against the tortfeasor; the existence of a preference in favor of one of the parties does not alter the basic nature of their relationship. In the context of workers compensation, that the employer's claim takes precedence over the employee's in certain circumstances does not change the employer's and employee's relationship as co-owners of the cause of action against the tortfeasor. La.R.S. 23:1103.

**8.** See fn. 2, supra.

motivation behind *Moody,* to correct an injustice whereby the injured employee bore the full expense of tort recovery while the compensation carrier or its insured reaped the benefits, applies as much in this context as in the realm of worker's compensation. Therefore, to the extent Legal Security benefits from plaintiffs' efforts in recovering against the tortfeasor, it must pay a proportionate share of the recovery costs.[9]

■ Even if I were unable to reach this result under *Moody,* a sense of equity demands apportionment in this case. For Legal Security to recover from plaintiff the full amount it paid under the policy, as a result of the efforts of plaintiffs' counsel, and not to reimburse its proportionate share of the expenses plaintiffs incurred in obtaining a recovery, results in unjust enrichment. As one Louisiana court recognized, "although *Moody's* proportionate sharing in attorney's fees and litigation expenses is premised on co-ownership, ... equity and the concept of unjust enrichment indicate that courts should allocate such expenses to an intervenor regardless of the co-ownership status." *Miller v. Sauseda,* 611 So.2d 831, 832–33 (La.App. 3d Cir.1992). This is particularly true in this case, where the subrogation clause expressly placed the obligation of prosecution on the insured.

Having determined that Legal Security is obligated to pay a proportionate share of recovery costs, it remains for me to determine the amount for which Legal Security is responsible. The parties have not provided a sufficient basis for me to make this determination.

Accordingly,

IT IS ORDERED that plaintiffs and defendant submit briefs not later than October 8, 1993 outlining the evidence I should consider in calculating Legal Security's proportionate share of recovery costs.

---

9. Legal Security argues that it should not have to pay for legal services to which it did not "consent." However, I find that Legal Security consented to representation by plaintiff's counsel both expressly and tacitly. First, by the express terms of the subrogation clause, the subrogor-insured was obligated to "do whatever ... is necessary to secure [the subrogee-insurer's] rights." This undoubtedly includes the obligation to prosecute any action against a third-party tortfeasor. Having placed this obligation on plaintiff, and having sat back and watched plaintiff successfully prosecute the medical malpractice action, Legal Security cannot now argue that it did not consent to the litigation expenses plaintiff incurred. Second, as recognized by the *Moody* court, whenever either party intervenes in the other's action, he tacitly consents to and ratifies all reasonable and necessary acts which are useful and beneficial to his interest. *Moody,* 498 So.2d at 1086.