United States Court of Appeals,

Fifth Circuit.

No. 93-3851.

Michael LABICHE, individually and as curator for the estate of Rhonda Labiche, and as administrator of the estates of the minor children, Alicia Labiche, Brandy Labiche, Carlee Labiche and Brett Labiche, Plaintiff-Appellee,

v.

LEGAL SECURITY LIFE INSURANCE COMPANY, Defendant-Appellant.

Sept. 14, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA, SMITH, and PARKER, Circuit Judges.

PER CURIAM:

Legal Security Life Insurance Co. ("Legal Security") appeals, based upon a contractual subrogation agreement, the apportionment for insureds' costs of recovery of $252,224.76 from the Louisiana Patient's Compensation Fund for future medical costs. Concluding that the subrogation agreement requires the apportionment of recovery costs, we affirm.

I.

On August 23, 1991, Rhonda Labiche suffered a cardiorespiratory arrest following medical treatment from her physician, Dr. Don Lee Bradke. She sustained anoxic encephalopathy as a result of the arrest and has been in a coma ever since.

Michael Labiche retained an attorney to prosecute a medical malpractice suit against Bradke. A complaint was filed with the Office of Risk Management, Patient's Compensation Fund, under the provisions of LA.R.S. 40:1299.41. On the same day, a petition for discovery was filed in the district court for the Parish of Orleans.

On August 3, 1992, a petition for damages was filed in the Parish of St. Tammany, seeking damages under the provisions of the Unfair Trade Practices Act. This petition was never served on Bradke. That same day, a similar complaint was filed in federal district court but ultimately was dismissed for a jurisdictional defect in the amount of damages sought.

On March 23, 1993, Legal Security filed an intervention in the Unfair Trade Practices Act suit. Intervention was granted on May 17, 1993, and the action is still ongoing.

A medical review panel convened on March 24, 1993, and rendered a decision in favor of the plaintiffs. On June 15, 1993, the Labiches filed an action in federal court alleging medical malpractice against Bradke. On July 22, 1993, the medical malpractice case was settled and approved by the district court. The plaintiffs recovered $100,000 from Bradke, $400,000 from the Louisiana Patient's Compensation Fund, and $252,224.76 from the Patient's Compensation Fund for medical expenses. The payment of $252,224.76 represents reimbursement of funds already paid by Legal Security on behalf of Mrs. Labiche under its major medical policy.

The sum of $252,224.76 was deposited into the registry of the court, and the Labiches and Legal Security filed motions to apportion recovery costs. On September 23, 1993, the district court entered an order under which Legal Security was obligated to pay a proportionate share of recovery costs in the amount of 33.237 (the amount Legal Security had paid Rhonda Labiche, $250,000, divided by the total recovery, $752,224.76), 832 F.Supp. 175. Furthermore, the court determined that the 407 contingency fee was reasonable. Therefore, since the total recovery was $752,224.76, the cost of recovery (i.e., attorneys' fees) was $300,889.90. Since Legal Security's interest was 33.237, its share of the attorneys' fees came to $99,985.71. Thus, of the $252,224.76 recovered from the Patient's Compensation Fund, the Labiches were entitled to $99,985.71, and Legal Security was entitled to the remainder.

## II.

## A.

As a preliminary matter, the Labiches claim that Legal Security's notice of appeal was defective. Legal Security filed a notice of appeal within thirty days of the denial of its FED.R.CIV.P. 59 motion. Its notice stated that it was appealing "the District Court's judgment rendered in this action on November 3, 1993, and entered on November 4, 1993." The judgment actually was entered on November 8. The notice of appeal also stated that the judgment became final on November 30, 1993, when the motion for new trial was denied. Thus, it was obvious to the Labiches that Legal

Security intended to appeal the entire judgment. The notice was not therefore defective. *See NCNB Tex. Nat'l Bank v. Johnson,* 11 F.3d 1260, 1269 (5th Cir.1994) (noting that courts of appeals liberally construe a notice where the intent to appeal an unmentioned ruling is apparent and there is no prejudice to the adverse party).

B.

The central question is whether the Labiches were entitled to the costs of recovery from the settlement funds. Legal Security claims that the district court erred in awarding the Labiches their cost of recovery. The apportionment of recovery costs under state law is a legal issue that we review *de novo. Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). "In order to determine state law, federal courts look to final decisions of the highest court of the state. When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992) (footnote omitted). In doing so, the decisions of lower state courts should be given some weight, but they are not controlling where the highest state court has not spoken on the subject. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). " "[A]n intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Id.* (ellipsis in original, citation and emphasis omitted).

C.

In *Moody v. Arabie,* 498 So.2d 1081 (La.1986),[1] the court fashioned a formula for apportioning recovery costs under which the court first determines the intervenor-subrogee's interest in the recovery by determining the ratio that the amount of compensation paid bears to the total recovery. The court then determines the cost of obtaining that recovery and applies the ratio to the total cost of recovery to determine the amount for which the intervenor-subrogee is responsible. *Id.* at 1085-87.

---

[1]Superseded by statute in part, *see* LA.R.S. 23:1103(C) (eff. Jan. 1, 1990).

Legal Security does not argue that the district court erred in applying the formula, but that the district court should not have apportioned the recovery costs at all. It argues that *Moody* was a workers' compensation case and its holding was limited to cases in which an employee and employer jointly own the right to receive compensation from a third-party tortfeasor. The Louisiana Supreme Court has not ruled on whether *Moody* is limited to the workers' compensation setting, so we are constrained to make an "*Erie* guess" on how that court would rule.

*Moody* says that "[w]hen an employer pays compensation to a worker who has been injured by the wrongful act of a third person, the employer and the worker become co-owners of a property right consisting of a right to recover damages from a third person." *Id.* at 1085. The *Moody* court did not explain how it reached the conclusion that the employer and the employee are co-owners of the cause of action against the tortfeasor, but it has long been recognized under Louisiana law that an employer who pays compensation benefits to an injured employee is subrogated by operation of law to the employee's rights against the third-party tortfeasor. *See* LA.CIVIL CODE ANN. art. 1829 comment (e); LA.R.S. 23:1101; *Chase v. Dunbar,* 185 So.2d 563, 571 (La.App. 1st Cir.), *writ refused,* 249 La. 572, 573 and 574, 187 So.2d 738 and 739 (La.1966).

The employer may recover from the tortfeasor only to the extent of the compensation it has paid or has become obliged to pay, so the subrogation is partial as opposed to total. LA.CIVIL CODE ANN. art. 1830; LA.R.S. 23:1101. One Louisiana intermediate appellate court explicitly cited *Moody* for the proposition that "[w]here the subrogation is partial, and the thing involved is a cause of action, co-ownership results." *Nicholes v. Helena Parish Police Jury,* 604 So.2d 1023, 1031 (La.App. 1st Cir.), *writ denied,* 605 So.2d 1378 (La.1992).

Louisiana's intermediate courts generally recognize that *Moody* applies in cases of partial subrogation. Courts declining to apportion attorneys' fees under *Moody* almost invariably distinguish the particular situation in their case from a strict subrogation. *See, e.g., Nicholes, id.* at 1032 (holding that charity hospital's subrogation rights statutorily invested with greater rights than tort victim-patient were intended to insure that charity hospitals are paid in full for the services they render); *Moore v. State, Louisiana State University Medical Center at Shreveport,* 596 So.2d 293

(La.App. 3d Cir.) (holding that statute granting state-supported hospital lien and privilege for medical services provided did not create true legal subrogation relationship, so hospital was not required to pay *pro rata* share of attorneys' fees), *writ denied,* 600 So.2d 667 (La.1992); *Charity Hospital of Louisiana v. Band,* 593 So.2d 1392 (La.App. 4th Cir.1992) (same), *writ denied,* 600 So.2d 645 (La.1992); *Miller v. Sauseda,* 611 So.2d 831 (La.App. 3d Cir.1992) (holding that contractual reimbursement clause superseded obligation as subrogee to pay *pro rata* share of legal expenses), *writ denied,* 614 So.2d 1254 (La.1993).

Furthermore, this court affirmed the district court's apportionment of litigation expenses under *Moody* in the context of a partial conventional subrogation in *Southern Pacific Transp. Co. v. Chabert,* 973 F.2d 441, 448 (5th Cir.1992). However, *Chabert* is not controlling here, as the issue on appeal was whether the apportionment complied with *Moody* rather than whether application of *Moody* was appropriate.

## D.

A notable exception to this general agreement that *Moody* applies to partial subrogation is *McLain v. Caddo Parish Sch. Bd.,* 599 So.2d 878 (La.App. 2d Cir.), *writ denied,* 605 So.2d 1123 (La.1992). *McLain* held that there was no co-ownership of a right to recover under the language of the subrogation provision of the policy involved in that case, and implied generally that partial subrogation does not result in co-ownership of the same property right.

We find *McLain* unpersuasive for a number of reasons. First, *McLain* is distinguishable based upon the policy language on which the court based its holding. In addition to a conventional subrogation clause, the contract in *McLain* contains a reimbursement clause that provides:

> B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
>
> 1. Hold in trust for us the proceeds of the recovery, and
>
> 2. Reimburse us to the extent of our payment.

*McLain,* 599 So.2d at 878. This provision parallels the reimbursement clause in *Miller,* in which the plaintiffs had "agreed to reimburse intervenor "any amount that I receive from a third person for payment of medical expenses to the extent that the plan may have already paid me for the same

medical expenses'." *See Miller,* 611 So.2d at 833 (reprinting decision of lower court in appendix).

The *Miller* court held that the insurer and the insured were not co-owners of a right to recover medical expenses, because the relationship between them "was premised on a contractual right of reimbursement from the plaintiffs rather than via subrogation against the defendant." *Id.* at 831. *McLain* explicitly based its holding upon the language of the subrogation and reimbursement clause. The Labiches' insurance policy contains no such reimbursement clause.

Our discussion of *McLain* does not stop there. *McLain* went on to say:

> Our conclusion is bolstered by language used by the Louisiana Supreme Court in *Southern Farm Bureau Casualty Insurance Company v. Sonnier,* 406 So.2d 178 (La.1981), a case involving partial subrogation of medical payments. In *Sonnier,* the supreme court stated that the subrogor and the subrogee, in a partial subrogation, each enjoys "an independent substantive right which may be exercised against the debtor." Thus, they are not co-owners of the same property right.

*McLain,* 599 So.2d at 879.

*McLain* 's reliance upon *Sonnier* is misplaced. *Sonnier,* which predated *Moody,* did not address whether a partially subrogated insurer and its insured are co-owners of the cause of action against the tortfeasor; it dealt with preferential rights between the subrogee and the subrogor. What *Sonnier* held was that, although the subrogor and the subrogee may exercise their rights against the tortfeasor independently, a subrogor who has been paid only in part may exercise his right for the balance of the debt in preference to the subrogee. *Sonnier,* 406 So.2d at 181.

*Sonnier* is inapplicable to the instant controversy, because the rights of the subrogor and subrogee against the "debtor" are roughly parallel to the rights of the workers' compensation employer or its insurer and the employee against a third-party tortfeasor. Under Louisiana's workers' compensation law, the employer and the employee each have what could be termed "an independent substantive right which may be exercised against the debtor." If an employer files suit against a third party tortfeasor for employment-related injuries before the employee files suit, the employee may still maintain a separate action for damages and need not intervene in the employer's pending suit. *Roche v. Big Moose Oilfield Truck Serv.,* 381 So.2d 396 (La.), *appeal dismissed,* 449 U.S. 808, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980).

Louisiana's workers' compensation law also provides that "[n]o compromise with such third

person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him." LA.R.S. 23:1103. And if an employer's and employee's rights are not completely independent under Louisiana's workers' compensation law, neither are a subrogor's and subrogee's rights as independent as *Sonnier* implies. For example, in *Audubon Ins. Co. v. Farr,* 453 So.2d 232 (La.1984), the court held that a subrogor could release the subrogee's claims against a third party and thereby bar suit by the subrogee against the third party. *Sonnier* simply does not address whether a cause of action is co-owned under *Moody.*

*McLain* also argues that Louisiana courts have resisted efforts to extend *Moody* beyond the workers compensation setting. We find this argument particularly unpersuasive in the context of partial subrogation in light of the fact that the two cases *McLain* cites for this proposition, *Band* and *Moore,* assume that a subrogee is normally liable for a *pro rata* share of legal expenses but distinguish the special case of charity hospitals. *See McLain,* 599 So.2d at 879.

We therefore conclude that *Moody* applies in cases of partial subrogation. The rationale given in *Moody* for creating the system of apportionment is that both a worker injured by a third party tortfeasor and an employer obligated to pay workers' compensation have a property right to recover damages from the defendant. *Moody,* 498 So.2d at 1084-85. As they are co-owners of this property right, the recovery must be apportioned between them.

Such is also the case where an insured contractually surrogates his claim to the insurer. The *Moody* court intended to prevent an intervenor insurance company from "free riding" on the plaintiffs' attorney by not paying any portion of the attorneys' fees. *Moody* appears to be based not upon any special principles of workers' compensation law, but on principles applicable to partial subrogation generally. Moreover, the Louisiana Supreme Court has given no indication that it intends to limit *Moody* to the workers' compensation setting.

We recognize that the task of predicting the final course to be taken by the supreme court of a state is a difficult one. The *Erie* guesses made under circumstances such as presented in this case are many times wrong. We have no assurance that the predictions we make today will ultimately fare better than the notable similar forays into diversity jurisdiction that have missed the mark. We

conclude, however, that the district court correctly applied the *Moody* formula to this case. We therefore AFFIRM the judgment.

REYNALDO G. GARZA, Circuit Judge, Concurring Specially;

I concur in the opinion prepared in the above case. I write specially because I would have preferred to certify the question of Louisiana law that we decide today to the Supreme Court of Louisiana. I was unable to get one of my co-panelists to certify the simple question of whether the formula in *Moody v. Arabie,* cited in the opinion, applied to other types of insurance other than workmen's compensation. Personally, I think that it should and that is the reason for my concurrence.