687 So.2d 416 (1996)
GREAT WEST CASUALTY COMPANY
v.
Rose Mary Warren MANNING, Tish Manning Dillon, Rita A. Manning, and Healthcare Recoveries, Inc.
No. 95 CA 2359.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
Martin E. Golden, Baton Rouge, for Defendant-Appellant Principal Healthcare of Louisiana, Inc.
Don Beard, Baton Rouge, for Defendants-Appellees Rose Mary Warren Manning, Tish Manning Dillon, and Rita A. Manning.
Before WATKINS and FOIL, JJ., and TANNER,[1] J. Pro Tem.
WATKINS, Judge.
This concursus proceeding arose out of a personal injury and wrongful death claim by Rose Mary Manning, Tish Manning Dillon and Rita A. Manning (Mannings). Principal Healthcare of Louisiana, Inc. (Principal) paid $90,435.35 in health care and hospitalization costs incurred on behalf of the decedent during the two days between the accident and his death. At issue is whether the health insurer, pursuant to language in its policy *417 with the insured decedent, is entitled to full reimbursement of the benefits it paid on his behalf, or whether the decedent's survivors are entitled to deduct a proportionate share of the attorney fees from that amount.
The Mannings did not file suit against the tortfeasor, but began negotiations with the tortfeasor's insurer. Principal had notified the Mannings of their obligation under the insurance policy to protect Principal's rights against any third party tortfeasor, and Principal was kept informed of the Mannings' pursuit of their claim. Less than a year after the accident, the Mannings reached a settlement with Great West Casualty Company in the total amount of $557,500.00. The settlement explicitly included the $90,435.35 in medical benefits paid by Principal.
Thereafter, a dispute arose between Principal and the Mannings concerning which one was responsible for the one-third attorney fees on the $90,435.35. Principal received two-thirds of the amount included in the Great West settlement as medical expenses. Great West then deposited the balance of $30,145.12 into the registry of the court and provoked a concursus proceeding.
The concursus proceeding was tried on stipulated facts and briefs, as well as exhibits filed into evidence. After trial, the judge gave oral reasons in which she specifically found as a fact that the attorney fee was "fair and reasonable," a matter which had been placed at issue by the parties. Because the record does not show that the trial court's finding of reasonableness was manifestly erroneous, we will not change the amount of the fee. Additionally, the judge in discussion with counsel for both sides indicated she was following this court's recent majority opinion in Durham Life Insurance Co. v. Lee, 625 So.2d 706 (La.App. 1st Cir.1993).[2] The district court rendered judgment awarding the amount in the registry of the court to the Mannings. Principal appealed.
After this appeal was lodged, the Louisiana Supreme Court specifically addressed the issue of the liability of a health insurer for a proportionate share of attorney fees in Barreca v. Cobb, 95-1651 (La. 2/28/96), 668 So.2d 1129. The court held that the principles of subrogation require a health plan insurer to contribute to the attorney fees incurred in obtaining a settlement with the tortfeasor, because, under the principles of subrogation, the insurer and the insured are co-owners of the right to recover the medical expenses paid by the insurer. The court explained Barreca in Hebert v. Jeffrey, 95-1851 (La. 4/8/96), 671 So.2d 904, citing with approval Labiche v. Legal Security Life Ins. Co., 31 F.3d 350 (5th Cir.1994), which also dealt with the attorney fee issue in an insurance context.
On appeal in the instant case, the appellee relies on Durham, Barreca, and Labiche. The following comments by the Louisiana Supreme Court explaining the principles embodied in those cases are instructive:
"Implicit in the Moody v. Arabie [498 So.2d 1081 (La.1986) ] holding is the concept that the intervenor who reaps the benefits of the plaintiff's attorney's efforts, should bear its proportionate part of a reasonable attorney's fee for those efforts." Taylor v. Production Services, Inc., 600 So.2d 63, 67 (La.1992). After all, "[t]he rationale given in Moody for creating the system of apportionment is that both a worker injured by a third party tortfeasor and an employer obligated to pay workers' compensation have a property right to recover damages from the defendant." Labiche v. Legal Security Life Insurance Co., 31 F.3d 350, 354 (5th Cir.1994) (citing Moody, 498 So.2d at 1084-85).
More recently, this court in Barreca v. Cobb, 95-1651 (La. 2/28/96), 668 So.2d 1129, extended the Moody rule beyond the workers compensation arena. In Barreca, after plaintiff filed suit against the tortfeasor, his insurer, Blue Cross, chose not to intervene. Id. In Barreca, the issue was whether the health insurer, pursuant to a clause in its policy with plaintiff, is entitled to full reimbursement for medical expenses *418 it paid on plaintiff's behalf or whether the plaintiff is entitled to deduct a proportionate share of the attorney fees from that amount. Id. at 1130.
Applying the Moody rationale to the Barreca subrogation situation, this Court held "that an insurer who has notice of the insured's claim but fails to bring its own action or to intervene in plaintiff's action will be assessed a proportionate share of the recovery costs incurred by the insured, including reasonable attorney's fees." Id. at 1132.
In sum, the Moody principles are based on fairness and equity. The motivation behind Moody is "to correct an injustice whereby the injured employee bore the full expense of tort recovery while the compensation carrier or its insured reaped the benefits." Labiche v. Legal Security Life Insurance Co., 832 F.Supp. 175, 178 (E.D.La.1993), aff'd, 31 F.3d at 350.
Hebert v. Jeffrey, 671 So.2d at 907.
The relevant provisions in Principal's policy are:

5.2 RIGHTS OF REIMBURSEMENT
This Article applies when a Member recovers damages, by settlement, verdict or otherwise, for an Injury, Illness, or other condition. If the Member has made, or in the future may make, such a recovery, including a recovery from any insurance carrier, We will not cover either the reasonable value of the services to treat such an Injury or Illness, or the treatment of such an Injury or Illness under this Agreement.
However, if We pay or provide benefits under this Agreement for such an Injury, Illness or other condition, the Member shall promptly reimburse Us from the settlement, verdict or insurance proceeds received by the Member for the reasonable value of the medical benefits paid for or provided by Us.
The Member hereby grants to Us a lien against the proceeds of any such settlement, verdict or other amounts received by the Member. The Member hereby assigns to Us any benefits that the Member may have under any automobile or other coverage to Us in order to enforce Our rights under this Agreement. The Member shall sign and deliver, at Our request, any documents needed to protect such lien or to effect such assignment of benefits.
The Member shall cooperate with Us, including signing and delivering any documents that We reasonably request in order to protect Our rights of reimbursement, providing any relevant information, and taking such actions as We reasonably request in order to assist Us in making a full recovery of the reasonable value of the benefits provided under this Agreement. The Member shall not prejudice Our right of reimbursement. We shall be responsible only for those legal fees and expenses to which We agree in writing.

5.3 SUBROGATION
This Article applies when another party is, or may be considered, liable for a Member's Injury, Illness or other condition (including insurance carriers who are so liable) and We have provided for benefits under this Agreement.
To the extent of the reasonable value of the services provided, We are subrogated to all of the Member's rights against any party liable for the Member's Injury or Illness or any party (including any insurance carrier) or for the payment for the medical treatment of such injury or occupational Illness. We may assert this right independently of the Member.
The Member is obligated to cooperate with Us in order to protect Our subrogation rights. Such cooperation shall include providing Us with any relevant information, signing and delivering such documents as We reasonably request to secure Our subrogation claim, and obtaining Our consent before releasing any party from liability for payment of medical expenses.
If the Member enters into litigation or settlement negotiations regarding the obligations of other parties, the Member must not prejudice, in any way, Our rights under this Article. The costs of Our legal representation in matters related to subrogation shall be borne solely by Us. The costs of legal representation of the Member shall be borne solely by the Member."
*419 Examining the policy language, our task is to decide whether the policy provides for subrogation or reimbursement. While subrogation and reimbursement are similar in effect, they are different principles. Barreca, supra. With subrogation, the insurer stands in the shoes of the insured and acquires the right to assert the actions and rights of the plaintiff, but with reimbursement the insurer has only a right of repayment against the insured. Although the cases cited by the Louisiana Supreme Court in Barreca do not address the insurer's liability for attorney fees, they are illustrative of the elements of subrogation and reimbursement. One of those cases is Smith v. Manville Forest Products Corp., 521 So.2d 772 (La.App. 2d Cir.), writ denied, 522 So.2d 570 (La.1988), in which the court noted that in practical effect a reimbursement agreement operates in almost all respects in the same way as a subrogation agreement. For example, the policy consideration that subrogation should not injure the subrogor is equally applicable to reimbursement. Smith, 521 So.2d at 776. The primary distinction, factually and equitably, between subrogation and reimbursement, is that the latter is applied to prevent the insured from obtaining double or multiple recovery by collecting from the insurer the same damages or expenses it has recovered from the tortfeasor. Id. at 777.
When we examine the language of Principal's policy, it is obvious that the insurer was attempting to establish both a right of reimbursement and a right of subrogation. However, the mere fact that the insured's settlement encompassed the full amount of the medical expenses does not entitle the insurer to pick and choose which of the two provisions to pursue. Because the insured would be damaged by Principal's recovery of the amount of the attorney fees, the label we place on Principal's right is immaterial. If we were to allow the insurer to recover the entire amount in the instant case, the Mannings would be receiving only two-thirds of the medical coverage they purchased with their premiums, resulting in a net loss or injury to the insureds. See Durham Life Ins. Co. v. Lee, supra at 710. Thus, despite the language in the policy dealing with reimbursement, the Barreca holding is controlling in the instant case.
Finally, Principal argues that it cannot be held liable for attorney fees herein because of the specific language in its policy excluding same. The language relied upon is: "The Member shall not prejudice Our right of reimbursement. We shall be responsible only for those legal fees and expenses to which We agree in writing." And, "Member must not prejudice, in any way, Our rights under this [Subrogation] Article. The costs of Our legal representation in matters related to subrogation shall be borne solely by Us. The costs of legal representation of the Member shall be borne solely by the Member."
Although there was no writing by which Principal agreed to be responsible for legal fees,[3] again, Principal cannot pick and choose between policy provisions.[4] The policy provides that the costs of Principal's legal representation in matters related to subrogation shall be borne by Principal. The only legal fee involved is the fee on the medical expenses portion of the settlement, which was returned to Principal either as a reimbursement of what Principal paid or as the amount to which it was subrogated to the insured's rights. Therefore, the only attorney fees for which Principal is liable is its own attorney fees; it is not liable for any portion of the insured's attorney fees.
Accordingly, we affirm the judgment of the trial court awarding the funds in the registry *420 of the court to the Mannings. We cast Principal for all costs of this appeal.
AFFIRMED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In this court Principal has filed a motion to remand, complaining that the trial court did not respond to its request for written findings of fact and reasons for judgment. We find that the comments of the trial judge suffice to inform the parties of the bases for judgment. A remand is unnecessary, and we hereby deny Principal's motion.
[3] To the extent that Principal's policy attempted to avoid liability for attorney fees mandated by the Louisiana jurisprudence, the provision is invalid as contrary to public policy.
[4] The scenario in the instant case is similar to the situation where the policy is drafted impermissibly to include one clause that provides coverage and another clause that excludes coverage.

The courts hold that the two provisions, at the very least, are ambiguous, and that ambiguities are resolved in favor of coverage. See United Services Automobile Assoc. v. Dunn, 598 So.2d 1169 (La.App. 1st Cir.1992), citing LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978) and Seals v. Morris, 423 So.2d 652 (La.App. 1st Cir. 1982).