625 So.2d 706 (1993)
DURHAM LIFE INSURANCE COMPANY
v.
W. Chapman LEE, Jeanne Y. Lee and Jeanne Elise Lee (Two Cases).
Nos. 92 CA 1691, 92 CW 1711.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
*707 Brian A. Eddington, Baton Rouge, for plaintiff-appellant Durham Life Ins. Co.
James P. Dore, Plaquemine, for defendant-appellee W. Chapman Lee, Jeanne Lee, and Jeanne E. Lee.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a suit by a medical insurer to recover the payments it made on behalf of its insured.

BACKGROUND
On October 29, 1983, Jeanne Elise Lee, the minor child of W. Chapman and Jeanne Y. Lee (the Lees), was involved in an automobile accident in which she sustained serious injuries. At the time of the accident, Jeanne Elise was insured as a dependent under a policy of health insurance issued to her father by Durham Life Insurance Company (Durham). From the date of the accident until 1990, Durham made payments under the terms of the health insurance policy on behalf of Jeanne Elise totalling $98,368.67.
On April 4, 1984, the Lees filed suit against the tortfeasor on behalf of their daughter for the damages sustained as a result of the accident.[1] In 1990, the litigation was concluded, and the Lees' and Jeanne Elise's judgment was fully satisfied.[2]

FACTS
Durham made demand upon the Lees and Jeanne Elise for repayment of the medical benefits paid pursuant to the terms of the insurance policy. On March 15, 1991, the Lees and Jeanne Elise made an unconditional tender to Durham of $65,572.00, which represented the amount of benefits paid less the attorney's fees required to collect such amount from the tortfeasor.[3]
On August 20, 1991, Durham filed suit against the Lees and Jeanne Elise for the remaining $32,796.67 in medical expenses.[4] *708 The Lees and Jeanne Elise answered Durham's petition, denying that Durham was entitled to any additional funds. The Lees and Jeanne Elise also asserted that, in the event that they are responsible to Durham for any additional funds, they are entitled to a set-off for the fees paid by them for the collection of the medical expenses.
Durham subsequently filed a motion for summary judgment. In support of its motion for summary judgment, Durham contended that it was entitled to the full amount of medical expenses that it paid up to the amount of the Lees' recovery for medical expenses from the tortfeasor. The Lees and Jeanne Elise also filed a motion for summary judgment. In support of their motion for summary judgment, the Lees and Jeanne Elise contended that Durham was responsible for its share of the costs of recovery of the medical expenses from the tortfeasor, including attorney's fees.
After a hearing on the motions, the trial court rendered judgment in favor of the Lees and Jeanne Elise, granting their motion for summary judgment and allowing a deduction of $13,599.21 for the costs of recovery from the amounts claimed by Durham, plus legal interest and costs. The trial court also denied Durham's motion for summary judgment. Shortly thereafter, the Lees and Jeanne Elise deposited into the registry of the court $20,619.19, representing all the monies due Durham through May 30, 1992.
From the trial court judgment, granting the Lees' motion for summary judgment, Durham appeals, assigning the following errors:
1. The trial court erred in failing to recognize plaintiff's right of reimbursement or alternatively, in classifying plaintiff's right of reimbursement as a right of subrogation.
2. The trial court erred in classifying attorney's fees as necessary costs of maintaining and conserving the cause of action against a third party tortfeasor.
3. The trial court erred in failing to give effect to defendants' written representation that plaintiff would be reimbursed to the extent of its payments.
Durham also filed an application for supervisory writs from the trial court judgment, denying its motion for summary judgment. By order of this court, dated September 25, 1992, Durham's writ application was consolidated with the appeal.

SUBROGATION
Subrogation is the substitution of one person to the rights of another. LSA-C.C. art. 1825. When subrogation results from a person's performance of the obligation of another, that obligation subsists in favor of the person who performed it who may avail himself of the action and security of the original obligee against the obligor, but is extinguished for the original obligee. An original obligee who has been paid only in part may exercise his right for the balance of the debt in preference to the new obligee. LSA-C.C. art. 1826.
Subrogation is a legal fiction whereby an obligation is extinguished with regard to the original creditor by payment which he has received from a third person or from the original debtor with funds provided by a third person. The third person then steps into the shoes of the original creditor, acquiring the right to assert the actions and rights of the original creditor. The intent to convey the right of subrogation must be clearly expressed. Smith v. Manville Forest Products Corporation, 521 So.2d 772, 775 (La.App. 2nd Cir.), writ denied, 522 So.2d 570 (La.1988); Wallace v. Aetna Life and Casualty Insurance Company, 499 So.2d 577, 580 (La.App. 2nd Cir.1986). The purpose of a subrogation clause is to prevent an injured party from multiple recovery for the same injury. Wallace v. Aetna Life and Casualty Insurance Company, 499 So.2d at 580.
In the absence of a provision in a health insurance policy granting subrogation to the insurer, the insured may collect from a third party tortfeasor and retain everything he has been paid by the insurer. Poche v. *709 City of New Orleans, 518 So.2d 1137, 1138 (La.App. 4th Cir.1987), writ denied, 521 So.2d 1173 (La.1988). However, an insurer that makes payment to its insured may enforce a conventional subrogation agreement contained in its policy. Smith v. Manville Forest Products Corporation, 521 So.2d at 775.
In such situations, where the policy provides for reimbursement by the insured to the insurer and the insured settles with the third party tortfeasor, the insurer is entitled to collect from the insured the benefits it paid. Poche v. City of New Orleans, 518 So.2d at 1138. However, subrogation cannot injure the insured, and if he has been paid only in part for his damages, he may exercise his right for what remains due in preference to his insurer. LSA-C.C. art. 1826; Smith v. Manville Forest Products Corporation, 521 So.2d at 775.
Whether Durham may recover the entire amount that it paid ($98,368.67) in the instant case depends on the language in its policy. The Durham policy contained a provision governing the right to recover payment, which provided as follows:
This provision "Right to Recover Payment" is a subrogation provision and is made a part of the Policy independently and exclusive of the Coordination of Benefits provision under the Policy.
If the Company makes any payment under this Policy and the Insured Person to or for whom such payment was made has a right to recover damages from any person or organization on account of any event which causes or contributes to the condition on account of which payment was made by the Company, the Company shall be subrogated to that right to the extent of its payments. The Insured Person shall execute and deliver instruments and papers and do whatever else is necessary to enable the Company to secure and exercise such rights and shall do nothing after loss to prejudice such rights.
If the Company makes any payment under this Policy and the Insured Person to or for whom such payment is made recovers damages from any person or organization on account of any event which causes or contributes to the condition on account of which payment was made by the Company, the Insured Person shall immediately notify the Company of such recovery. The Insured Person shall hold in trust for the Company the proceeds of any such recovery and shall reimburse the Company to the extent of its payment. (emphasis added).
Although Durham argues in brief that this provision is not a subrogation provision, we note that the section of the plan, entitled "Right To Recover Payment," specifically states that it is a subrogation provision. While the fact that an insurer attaches a particular appellation to a provision does not necessarily control the substance of the provision, it is certainly a substantial factor in analyzing and characterizing the provision. Second, subrogation has as its primary object reimbursement of the subrogee for payments made by it.
Although subrogation and reimbursement may not be synonymous terms, the object of conventional subrogation is reimbursement, which is clearly contemplated and provided for in the above quoted provision of the plan. See Smith v. Manville Forest Products Corporation, 521 So.2d at 775. Therefore, we find that, under the express provisions contained in the policy, Durham was conventionally subrogated to the Lees' rights against the tortfeasor, and the rules of subrogation apply.
Having determined that Durham is entitled to collect from its insureds for the medical expenses which it paid on behalf of the insureds, we must next determine the amount to which Durham is entitled.
In Liberty Mutual Insurance Company v. Weinberger, 329 So.2d 254, 256 (La.App. 4th Cir.1976), the insurer sought reimbursement from the proceeds of a settlement with the tortfeasor without contribution to attorney's fees. The court determined that the policy's reimbursement provision required reimbursement from the "proceeds" of the judgment or settlement. As a result, the court determined that the insurer's recovery was limited to the "net proceeds." The practical *710 effect of this reimbursement provision was to make the insurer assume only the risk that the third party tortfeasor may delay in paying a claim because of a dispute over liability or may be judgment-proof even if admitting liability. The court analogized the insurance coverage to a loan, repayable only in the event and to the extent that proceeds were obtained from a settlement or judgment with the tortfeasor.
A similar claim was made by the insured in American Greetings v. Manuel, 602 So.2d 160, 162 (La.App. 3rd Cir.1992). In that case, the court determined that the reimbursement language in the insurance contract limited the insurer's recovery to the "proceeds" received from the tortfeasor. The court noted that limiting the insurer's recovery to the "proceeds" protected the insured against sustaining a net loss after he reimbursed the insurer. The court hypothesized a situation where the insured recovered a certain amount. Thereafter, he was required to reimburse the insurer the full amount of his recovery. The insured would then be left with the attorney's fees and costs incurred to collect the insurance benefits paid by the insurer, resulting in a net loss to the insured. Limiting reimbursement from the "proceeds" received from the tortfeasor avoided such an inequitable result.
In the instant case, Durham made payment to the Lees and Jeanne Elise, and the Lees and Jeanne Elise subsequently recovered damages from the tortfeasor for payments which were made by Durham. Therefore, under the express provisions of the policy, the insureds were required to "hold in trust for the Company the proceeds of any such recovery" and were required to reimburse Durham to the extent of its payment. Therefore, we find that the policy's reimbursement provision required reimbursement from the "proceeds" of the judgment or settlement, denoting gross settlement less the costs incurred in recovering this amount. As a result, under the terms of the Durham policy, the insurer's recovery was limited to the "net proceeds." To require the Lees to pay for medical expenses in excess of the amount that they actually received (the medical expenses less attorney's fees required to recover the expenses) would result in a net loss or injury to the insureds.
The Lees and Jeanne Elise recovered $98,368.67 from the tortfeasors and were required to pay their attorney one-third of this amount for the collection of these funds. Therefore, the proceeds from the Lees recovery were $65,572.00 ($98,368.67 less attorney's fees of $32,796.67), which they were required, under the policy provisions, to hold in trust for Durham. Therefore, the Lees were required to reimburse Durham, $65,572.00.[5]
Because of our determination that, pursuant to the conventional subrogation agreement contained in the Durham policy, the Lees were required to reimburse the insurer only from the "net" proceeds of the settlement with the tortfeasor (proceeds for the reimbursement of medical expenses less the attorney's fees associated with the collection of those medical expenses), we find it unnecessary to address the applicability of Moody v. Arabie, 498 So.2d 1081 (La.1986).[6]

*711 CONCLUSION
For the above reasons, the judgment of the trial court is affirmed, and the writ is denied. Durham is cast for all costs.
AFFIRMED; WRIT DENIED.
GONZALES, J., dissents and assigns reasons.
GONZALES, Judge, dissenting.
I respectfully dissent. Assuming that (1) the rationale of Moody v. Arabie, 498 So.2d 1081 (La.1986) does not apply to this case and that (2) the language of Liberty Mutual Insurance Company v. Weinberger, 329 So.2d 254 (La.App. 4th Cir.1976) is correct and should be followed, the calculation made by the majority regarding the amount the Lees owe Durham is inaccurate.
According to Liberty Mutual, an insured must reimburse his insurer from the "proceeds" of the judgment or settlement he receives. Liberty Mutual refers to "proceeds" as the total recovery less attorney fees and costs. Therefore, in the present case, application of the Liberty Mutual formula is as follows:

*712
 1,530,000.00 = total recovery received by the Lees from tortfeasors[1]
- 509,490.00 = 1/3 (33.3%) contingency fee to attorney[2]
- 0.00 = other costs associated with recovery[3]
 ____________
 1,020,510.00 = "proceeds" received by the Lees
- 98,368.67 = amount owed to Durham for medical expenses it paid
 ____________
 922,141.40 = net proceeds retained by the Lees

Even if the total recovery received by the Lees is limited to that portion of the award attributable to medical expenses, the figures would be:

 225,500.00 = recovery received by the Lees for medical expenses[4]
- 75,091.50 = 1/3 (33.3%) contingency fee to attorney
- 0.00 = other costs associated with recovery
 __________
 150,408.50 = "proceeds" attributable to medical expenses
- 98,368.67 = amount owed to Durham for medical expenses it paid
 __________
 52,039.83 = net proceeds of medical award retained by the Lees

Either of the above calculations shows that under the Liberty Mutual rationale, the "proceeds" received by the Lees were sufficient to reimburse Durham the entire $98,368.67 paid by Durham for the medical expenses of Jeanne Elise Lee.
The majority maintains that "[t]he Lees and Jeanne Elise recovered $98,368.67 from the tortfeasors" and then uses this figure to determine the "proceeds" of the recovery. However, the Lees received much more from the tortfeasors than the $98,368.67 in medical expenses paid by Durham; the total award was at least $1,530,000.00 and that portion of the award attributable to medical expenses was at least $225,500.00. However, because these figures were not presented as evidence to the trial court, I think the appropriate course of action would be to remand this case for an assessment by the trial court of "proceeds" based on the total recovery or total medical expense recovery received by the Lees from the tortfeasors.
Further, automatic acceptance of the one-third contingency fee contract between the Lees and their attorney as an appropriate amount by which the total award should be reduced to arrive at "proceeds" is improper. Although Liberty Mutual allows a deduction of attorney fees to arrive at "proceeds," there is no evidence in the record that the trial court determined that a one-third attorney fee was reasonable in this case.[5] Since the Liberty Mutual decision, the supreme court has held that, when determining and fixing attorneys' fees, the trial court must adhere to Code of Professional Responsibility Disciplinary Rule 2-106(A) which prohibits a lawyer from collecting a fee that is in excess of a *713 reasonable fee and must consider the factors set forth in Disciplinary Rule 2-106(B) to determine the reasonableness of fees. These rules of professional conduct "permit a court to consider an attorney-client contract among other factors but prohibit it from being bound by such an agreement in determining reasonable attorneys' fees." Moody v. Arabie, 498 So.2d at 1086 (La.1986) (emphasis added); State, Department of Transportation and Development v. Williamson, 597 So.2d 439, 443 n. 10 (La.1992). This "reasonableness inquiry" applies where attorney fees are set by statute, City of Baton Rouge v. Stauffer Chemical Company, 500 So.2d 397, 400-401 (La.1987); where attorney fees are set by contractual agreement, Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 219 (La.1982); as well as where attorney fees are set on a contingency fee basis, Moody v. Arabie, 498 So.2d at 1086 (La.1986) and Pharis & Pharis v. Rayner, 397 So.2d 1295, 1296 (La.1981).
In this case, there is no evidence in the record indicating that the trial court was presented with any evidence with which to evaluate the reasonableness of the one-third contingency fee received by the Lees' attorney. Although Durham did not assign this as error on appeal, I point out the trial court's failure to evaluate the attorneys' fees because of the current requirement that he do so which did not exist at the time Liberty Mutual was decided.
Therefore, because the "proceeds" calculation under Liberty Mutual was not based on the total recovery or total medical expense recovery received by the Lees, and because there is no evidence in the record regarding the reasonableness of the one-third contingency fee received by the Lees' attorney, I dissent from the majority opinion affirming the granting of summary judgment in favor of the Lees.
NOTES
[1] Durham did not intervene in the Lees' suit against the tortfeasor to assert a claim for reimbursement for the medical expenses paid on behalf of Jeanne Elise.
[2] At the time the litigation on the tort suit had been concluded and the judgment satisfied, Jeanne Elise had reached the age of majority.
[3] The Lees had entered into a contingency fee contract with their attorney in the tort suit. Under the terms of the contingency fee contract, the Lees' attorney received one-third (1/3) of the amount recovered.
[4] Durham's petition alleged the following:

5.
Shortly thereafter, on February 20, 1991 undersigned counsel made demand on the Lees' attorney of record for repayment of the total insurance payments of $98,368.69, pursuant to the subrogation clause provided for in the policy of insurance covering Jeanne Elise Lee.
6.
On or about March 15, 1991 defendants made an unconditional tender to Durham Life Insurance Company in the sum of $65,572.00, representing two-thirds (2/3) of the amount paid by Durham Life Insurance Company as insurance benefits.
7.
Despite repeated demand, the defendants have refused to pay the remaining balance of $32,796.67 which remains due and owing under the terms of the subrogation clause provided for in that policy of insurance issued by Durham Life Insurance Company.
[5] In the instant case, the Lees unconditionally tendered $65,572.00 and, after the trial court judgment, deposited with the court an additional $20,619.19, which represented the unpaid balance claimed by Durham less the deduction permitted by the trial court of $13,599.21. However, the Lees did not appeal or answer the appeal; therefore, the judgment as to the Lees is final and may not be modified on appeal.
[6] In Moody v. Arabie, 498 So.2d 1081 (La.1986), the Louisiana Supreme Court addressed the issue of whether an employer or its insurer is obligated to pay a portion of the attorney's fees when a third party suit is brought or recovery is effected by the injured worker. The court determined that the worker and the compensation insurer are co-owners of the right to recover damages from the third party and that the co-owners are obligated to bear their proportionate share of the reasonable and necessary litigation expenses, including attorney's fees, according to their interest in the recovery. The essence of this rationale is that (1) the worker's compensation law is silent about payment of litigation costs by the employer and the worker against a third party tortfeasor, (2) the employer and the worker are co-owners of the tort cause of action against a third party tortfeasor and the general law pertaining to co-ownership controls their legal relations on the issue of payment of litigation costs, (3) the employer and the worker (as co-owners) cannot exercise any legal acts involving the direct ownership of the cause of action without the consent of the other, (4) either co-owner can force the other to contribute to the cost of preserving the tort cause of action, and (5) the necessary and reasonable costs of recovery on the tort cause of action should be proportioned between the employer and the worker according to their interest in the recovery.

The courts of this state have consistently applied the Moody formula to claims for reimbursement in the context of worker's compensation benefits. See Graves v. Lou Ana Foods, Inc., 604 So.2d 150, 167-68 (La.App. 3rd Cir.1992); Rivet v. LeBlanc, 600 So.2d 1358, 1363 (La.App. 1st Cir.), writ denied, 605 So.2d 1115 (La.1992); Thompson v. Gray & Company, 590 So.2d 1318, 1319-22 (La.App. 1st Cir.1991); and Broussard v. Olin Corporation, 546 So.2d 1301, 1306-08 (La.App. 3rd Cir.1989). However, the courts have been somewhat reluctant to apply the rationale of Moody to contexts other than worker's compensation.
In Nicholes v. St. Helena Parish Police Jury, 604 So.2d 1023, 1031-34 (La.App. 1st Cir.), writ denied, 605 So.2d 1378 (La.1992), Charity Hospital intervened in suits by its patient against various tortfeasors, seeking reimbursement for the medical services rendered to the patient. The patient reconvened for reasonable attorney's fees for the services of his attorney for prosecuting the main demand, citing Moody. The court noted that Charity is subrogated to the rights of the patient by operation of law (LSA-R.S. 46:8) and that Charity's subrogation has been statutorily invested with a substantial number of procedural protections that are greater than those of a tort victim-patient. Accordingly, the court refused to permit the victim-patient to recover from Charity attorney's fees of 40% of the amount recovered by Charity.
Similarly, in Charity Hospital of Louisiana in New Orleans v. Band, 593 So.2d 1392, 1394-95 (La.App. 4th Cir.), writ denied, 600 So.2d 645 (La.1992), the court distinguished Moody, noting that the worker's compensation statute, LSA-R.S. 23:1102(A) and (B), specifically granted the employer a property right in the claim of the injured worker. However, absent legal or conventional subrogation by the debtor, Charity Hospital had no independent right to seek from the tortfeasor the medical expenses incurred by the patient. The court noted that the relationship between Charity and the patient were that of debtor-creditor and not co-owners of a litigious right. As a result, there was no obligation for a proportionate sharing of expenses.
In Miller v. Sauseda, 611 So.2d 831, 832-33 (La.App. 3rd Cir.1992), writ denied, 614 So.2d 1254 (La.1993), our brethren of the Third Circuit Court of Appeal distinguished Moody and noted that ideally an intervenor who recovers due to the efforts of a plaintiff's attorney should be required to bear a portion of the expenses based on the amount of his recovery. However, in the absence of legislative mandate, the court declined to apply such a benefit analysis to a case involving health insurance in light of the binding and persuasive jurisprudence which focuses on co-ownership as a prerequisite to pro rata sharing of attorney's fees and other expenses and costs of recovery. Accordingly, the court in Miller held that, although the insureds owed reimbursement to the insurer, the insurer was not liable to the insureds for a pro rata share of attorney's fees and costs of litigation.
In McLain v. Caddo Parish School Board, 599 So.2d 878, 879 (La.App. 2nd Cir.), writ denied, 605 So.2d 1123 (La.1992), the plaintiffs' insurer paid for the plaintiffs' medical expenses pursuant to its medical payments provisions of the automobile policy. When the insurer filed an intervention in plaintiffs' suit against the tortfeasor to recover the medical expenses it paid, the plaintiffs' sought recovery against their insurer for costs, expenses, and attorney's fees, which were incurred and allegedly inured to the benefit of the insurer. The Second Circuit refused to extend the rationale of Moody and determined that the plaintiffs and the insurer were not co-owners of the same property right. Accordingly, the appellate court reversed the trial court judgment awarding the plaintiffs a portion of their attorney's fees.
[1] The record does not contain the total amount awarded to the Lees. In Durham's brief, the total award is listed as $1,626,600.00. However, the Lees argue in brief that the award was reduced by this court to $1,530,000.00. I use the lower figure because there is no dispute that the award was at least $1,530,000.00.
[2] The affidavit of W. Chapman Lee indicates that there was a one-third contingency fee contract with the Lees' attorney. Therefore, it is assumed that one-third of the total recovery was paid to the Lees' attorney. One-third of $1,530,000.00 is $509,490.00.
[3] The Lees do not claim that they are entitled to any costs other than attorneys' fees.
[4] W. Chapman Lee's affidavit indicates that the total amount received for medical expenses was $225,500.00; but, in the trial court's judgment at footnote 1 and in appellant's brief at page 2, the amount is listed as $235,500.00. I use the lower figure because there is no dispute that the award was at least $225,500.00.
[5] In view of the extensive litigation involved in this case, a one-third contingency fee is probably reasonable compensation for the efforts of the Lees' attorney; however, because the record lacks evidence of the reasonableness of the fee, this probability cannot be merely accepted as true. Durham cannot be made automatically liable for the one-third contingency fee between the Lees and their attorney because Durham was not a party to that contract.